349 P.2d 986

John G. McCALLUM, Plaintiff-Cross-
Defendant-Appellant,

v.

CAMPBELL–SIMPSON MOTOR CO., a cor-
poration, Defendant-Cross-Complain-
ant-Respondent.

IDAHO FIRST NATIONAL BANK, a na-
tional banking association, Plaintiff in
Intervention-Respondent,

v.

John G. McCALLUM, Defendant in
Intervention-Appellant.

No. 8772.

Supreme Court of Idaho.
Jan. 15, 1960.

On Rehearing March 22, 1960.

Anderson, Kaufman & Anderson, Boise, for appellants.

Givens, O'Leary, Doane & Givens, Davison, Davison & Copple, Boise, for respondent.

KNUDSON, Justice.

On May 16, 1957, respondent Campbell-Simpson Motor Co. (hereinafter referred to as respondent Motor Company) owned and held all of the issued capital stock, amounting to 1200 shares, of the Campbell-Simpson Buick, Inc. (hereinafter referred to as the Buick Company), an Idaho corporation. Said stock had a book value as shown by the books of said Buick Company, as of April 30, 1957, amounting to $113,894.88, less repossession reserves of $13,204.54. On said date, May 16, 1957, appellant entered into a written contract with said respondent for the purchase by appellant of all the issued and outstanding stock of the said Buick Company for the sum of $100,690.34, payable in specified installments.

Respondent and plaintiff in intervention, The Idaho First National Bank (hereinafter referred to as respondent Bank) was administrator of the estate of Al J. Campbell, deceased, who during his lifetime was the owner of 147 shares of the capital stock of respondent Motor Company and said administrator had been assigned a 49% interest in the payments to be made by appellant under said purchase contract.

Under the terms of said purchase contract the respondent Motor Company guaranteed the books and records of the Buick Company to be substantially correct and that there were no undisclosed liabilities. It also guaranteed the assets of said Buick Company, including the financial reserve and receivables as shown by its books and records, to be substantially accurate and correct.

Appellant commenced this action alleging a breach of the contract in that certain of the assets of said Buick Company were, upon the books and records of said Company, overstated in the amount of $16,316.04, that the liabilities were understated in the sum of $3,091.78 and that there were undisclosed liabilities of the Company in the sum of $4,412.22, and prayed that the combined total thereof be deducted from the balance due upon the contract.

Respondent Motor Company by its answer admitted that three asset items were, upon the books of said Buick Company,

overstated in the amount of $1,694.63 but denied the overvaluation of any other asset. Said respondent also denied that there were any understated or undisclosed liabilities and asserted that the actual value of all the assets was equal to or in excess of the value as stated on the books and records of the Company. Said respondent Motor Company also filed a cross-complaint which was denied by appellant. No proof was offered in support of said cross-complaint and it is not in issue upon this appeal.

In addition to the three asset items concerning which respondent Motor Company admitted the net book value to be overstated the trial court found the net book value of the used cars and accessories belonging to said Buick Company to be overstated in the amount of $11,782.05. Respondent Motor Company contended and attempted to prove, over objections by appellant, that the value of the assets, consisting of machinery, shop equipment, furniture and fixtures, as of April 30, 1957, was substantially in excess of the value as stated upon the books and records of the Company. The trial court however found that the correct value was as stated in such books and records. The court further found that a depreciation reserve in the amount of $10,616.94 had been built up for said last mentioned assets and concluded that said reserve should be deducted as an offset against the total of the overstated assets and the understated and undisclosed liabilities. It is this action of the trial court that is the basis of this appeal.

■ Each of the assignments of error is based upon the trial court's action in reducing and offsetting the amount of appellant's damages by the amount of said depreciation reserve accounts and accordingly only one question is at issue which is stated by the appellant as "The sole question presented by this appeal is whether or not the court rightfully reduced and offset the amount of appellant's damages by the amount of the depreciation reserve account".

Portions of the contract here involved which are pertinent to the issue presented are as follows:

"This Agreement Made and entered into this 16th day of May, 1957, by and between Campbell-Simpson Motor Company, an Idaho Corporation, of Boise, Idaho, first party, and John G. McCallum, of Milton-Freewater, Oregon, second party,

"Witnesseth: For and in Consideration of the terms and conditions herein contained first party agrees to sell to second party and second party agrees to purchase and pay for Twelve Hundred shares of the capital stock of the Campbell-Simpson Buick, Inc., an Idaho Corporation, which had a net

value as shown by the books of Campbell-Simpson Buick, Inc. as of April 30, 1957 of $113,894.88 less repossession reserves of $13,204.54.

"Second party agrees to pay the purchase price for said stock the sum of $100,690.34 to be paid to first party as follows:

\*  \*  \*  \*  \*  \*

"It is further mutually understood and agreed, by and between the parties hereto as follows:

\*  \*  \*  \*  \*  \*

"3.  Second party has examined, or caused to be examined by his agent all of the books and records of Campbell-Simpson Buick, Inc., and first party guarantees that the same are substantially correct and that there are not any undisclosed liabilities of the Corporation other than shown by the books of the Corporation including Federal and State taxes.  First party guarantees that the assets of said Corporation as shown by the books thereof, including the financial reserves and receivables are substantially accurate and correct."

It is clear from the wording of the contract and the evidence introduced that prior to the execution of the contract appellant had examined or caused to be examined the books and records of the Buick Company.  It is also clear that according to the financial statement of the Buick Company as of April 30, 1957, the net book value of its assets, after deducting the amount of repossession reserves, was in the sum of $100,690.34.  Since said sum is the identical amount specified in the contract as the purchase price for the stock it is convincing that the parties relied upon said financial statement as disclosing the net book value of the Buick Company.

By the terms of the contract respondent Motor Company guaranteed

(1) that the books and records of the Buick Company are substantially correct,

(2) that there are no undisclosed liabilities of said Buick Company,

(3) that the assets of said Buick Company as shown by its books are substantially accurate and correct,

(4) that the financial reserves and receivables of said Buick Company as shown by its books are substantially accurate and correct.

By "substantially accurate and correct" as used in said contract is meant that although minor discrepancies may exist, the matters referred to are in substance correctly shown.  Funk & Wagnalls Standard Dictionary defines "substantially" as "in a substantial sense or manner; in substance; essentially; practically".

Another expression used in said contract which is deserving of clarification

is "first party guarantees". The rights of the parties under this contract are determined by the nature and effect of this clause. In strict legal contemplation a "guaranty" is the assurance of the payment of a debt or the performance of a duty or contract by another person. Gay Oil Co. v. Roach, 93 Ark. 454, 125 S.W. 122, 27 L.R.A.,N.S., 914. However the authorities recognize that the word "guarantee" is frequently employed in business transactions to describe, not the securing of a debt, but an intention to be bound by the representation made. 24 Am.Jur. 876. The meaning of the word guarantee in this contract must be gathered from the context of the entire instrument and from the subject-matter about which it treats; for this will more surely give the expression that meaning which will carry out the true intent of the parties. Considered in this way it appears that the parties used the term synonymously with "warranty" and in effect stated that the first party was bound by the representation that the books and records referred to disclose true values and the true condition of the Buick Company and that the second party could rely thereon.

The respondent Motor Company by its answer admitted that an adjustment should be made relative to the three following mentioned assets and that credit be given appellant for the amount overstated, to-wit:

| Asset | Stated Value | True Value | Amount Overstated |
|---|---|---|---|
| Gas, Oil & grease | $1,748.57 | $ 920 49 | $ 828.08 |
| Sublet repairs | 480.51 | 46.40 | 434.11 |
| Prepaid Ins. | 1,619.05 | 1,186.61 | 432.44 |
| | | Total | $1,694.63 |

The court found that the values of the two following mentioned assets were overstated in the books of the Buick Company as follows:

| Asset | Stated Value | True Value | Amount Overstated |
|---|---|---|---|
| Used cars | $46,977.05 | $36,395.00 | $10,582.00 |
| Accessories | 3,129.23 | 1,929.23 | 1,200.00 |
| | | Total | $11,782.05 |

The court also found that the Buick Company was additionally obligated to the extent of the following mentioned understated and undisclosed liabilities, to-wit:

| Liability | Amount Disclosed | True Amount | Amount Undisclosed |
|---|---|---|---|
| Payroll | $ 368 50 | $ 731.65 | $ 363.15 |
| Vacation payroll | 350.00 | 1,666.76 | 1,316.76 |
| Trade creditors | 3,326.19 | 4,365.79 | 1,039.60 |
| Interest | 000.00 | 372.27 | 372.27 |
| | | Total | $3,091.78 |

The court found that contrary to the provisions of the contract the net book value of the Buick Company was overstated by the total sum of $16,568.26. Although the respondent Motor Company put in issue the value of the machinery, shop equipment, furniture and fixtures, the court found the

correct value of those fixed assets to be identical to the value thereof as stated in the books of the Buick Company. However the court found, as disclosed by the books of the Buick Company, that a depreciation reserve account in the amount of $10,616.-94 had been built up for said fixed assets. Said reserve account was listed in the financial statement as a liability and the court concluded that appellant, under the purchase contract actually paid for said fixed assets only the difference between the true value and the amount of the reserve account or the amount of $4,199.19 and that by reason thereof the amount of said reserve account should be allowed as an offset against the total damages appellant would otherwise be entitled to recover. Accordingly the trial court reduced appellant's damages by the sum of $10,616.94. Such action was error. The value of the machinery and shop equipment as shown by the books of the Company is $8,474.12 which is the true value as fixed by the court. The value of the furniture and fixtures as shown by said books is $6,342.01 which is the true value as fixed by the court. There is no understatement as to either asset. Under the terms of the contract the respondent Motor Company not only guaranteed that the assets of the Buick Company as shown by its books were substantially accurate and correct but it likewise guaranteed that the financial *reserves* as shown by its books were also substantially accurate and correct. It is apparent, from the language of the contract, that the parties were aware of and concerned with the reserves as shown by the books. It is possible that the contract here involved would never have been entered into had it not been for the fact that the books and records of the Buick Company listed and disclosed the reserves as they are. We must construe the contract according to the plain language used by the parties. While a court may interpret agreements voluntarily entered into, a court cannot modify an agreement so as to create a new and different one, nor is a court at liberty to revise an agreement where its interpretation is involved. Courts cannot make for the parties better agreements than they themselves have been satisfied to make, and by a process of interpretation relieve one of the parties from the terms which he voluntarily consented to; nor can courts interpret an agreement to mean something the contract does not itself contain. 12 Am.Jur. 749; Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Ohms v. Church of the Nazarene, 64 Idaho 262, 130 P.2d 679.

In the instant case appellant is entitled to recover the difference between the represented value of the assets and the actual fair value as of the date of the contract plus any understated or undisclosed liabilities. Jesse M. Chase, Inc. v. Leonard,

69 Idaho 109, 203 P.2d 600; Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021; Lockwood Graders of Idaho v. Neibaur, 80 Idaho 123, 326 P.2d 675. By deducting the depreciation reserves from the amount of appellant's recovery the trial court in effect rewrote the contract for the parties. The depreciation account was no part of any claim or theory by any party during the trial. It is not contended by either party that the depreciation reserves as shown by the books and records involved were in any respect incorrect, deceiving or misunderstood or that such entries are not in keeping with accepted business and accounting practice.

The judgment is reversed and the cause remanded with instruction to enter judgment in accordance with the views herein expressed. Costs to appellant.

TAYLOR, C. J., SMITH and Mc-QUADE, JJ., and BROWN, D. J., concur.

PORTER, C. J., not participating.

On Rehearing

KNUDSON, Justice.

In the above entitled cause a petition for rehearing having been granted the cause was reargued on March 9, 1960.

After a careful re-examination of the issues involved in the above entitled cause, we have concluded to adhere to the views expressed in the opinion heretofore filed herein.

TAYLOR, C. J., SMITH and Mc-QUADE, JJ., and BROWN, D. J., concur.