812 P.2d 268

**Marcia Kahn BONDY, Plaintiff-respondent,**

v.

**Paul E. LEVY, Defendant-appellant.**

**No. 18214.**

Supreme Court of Idaho, Boise, January 1991 Term.

May 7, 1991.

Rehearing Denied July 18, 1991.

Bohner, Chasan, Walton & Bauer, Boise, for defendant-appellant. Charles B. Bauer, argued.

Cosho, Humphrey, Greener & Welsh, Boise, for plaintiff-respondent. Stanley W. Welsh, argued.

BAKES, Chief Justice.

This is a breach of contract action filed by respondent Marcia Bondy (Bondy) against her former husband, appellant Paul Levy (Levy). The contract in this case was a property settlement and custody agreement signed in March, 1985 (settlement agreement). Bondy brought her action to recover allegedly deficient support payments owed under the settlement agreement. The district court awarded Bondy $18,250, representing part of the deficient payments she had initially claimed, as well as moneys accrued and owing up to the time the district court entered judgment. Levy appeals this ruling.

Bondy and Levy were married on May 2, 1977; they were divorced on May 31, 1985. They have two children. In March, 1985, the parties entered a settlement agree-

ment. This agreement was approved by the court and, except for child support and child custody portions, the agreement was not incorporated into the divorce decree. The agreement settled Bondy's claim for child support by requiring Levy to make payments to Bondy and further requiring Bondy to support the children from these payments.

This type of agreement is known as a "Lester" agreement, entitling the parties to certain tax benefits.[1] Typically, such agreements require the husband to make payments of a certain amount and allow him thereafter to obtain a deduction from taxes for the payment. Through the agreement, Levy provided Bondy with funds which she would use to provide for all the children's needs. The payments were $1,500 a month, $1,000 of which was used to cover all the children's needs, and $500 of which was allowed to cover "overhead," including Bondy's income tax costs resulting from the support arrangement.

In April, 1985, the parties made a written modification of the contract. The modification dealt with Bondy's duty to pay back to Levy $1,000 per month if Levy had custody of the children for a majority of the month. The modification in turn required Levy to provide for all the children's needs when he had majority custody.

In September, 1986, Levy became disabled and was hospitalized in Spokane, Washington. In October, 1986, Bondy met Levy in Spokane and allegedly told him not to make any payments "as long as he was ill." Levy, however, continued paying $500 per month, the same as he had been doing when he had full custody. Levy made payment for November and December, 1986, by a $1,000 check dated November 20, 1986, which has been credited by Bondy as $500 for November and $500 for December, 1986.

Levy moved to Boise in November, 1986, residing in Bondy's home for a time with the children. On January 27, 1987, Levy wrote a letter to Bondy in which he alleg-

edly confirmed the existence of the oral agreement and waiver of contract payment and requested a renegotiation of the contract payment, based upon a renegotiation provision in the contract which was contingent upon changes in the tax law which had recently occurred. In response to Levy's letter, Bondy's attorney sent a letter dated January 30, 1987, allegedly acknowledging Levy's request for modification. The letter stated that Bondy was not expecting Levy to "comply with an agreement you are unable to fulfill." Bondy's attorney responded to Levy's request for modification of the payment by proposing a "change of maintenance to child support if the tax analysis illustrates that purpose."

A renegotiation did not materialize and on March 9, 1987, Bondy filed a complaint seeking recovery for allegedly delinquent payments owed under the settlement agreement as well as support payments which would accrue up to the time of the court's judgment. Bondy denied that any contract modifications or agreements had been made and that the April, 1985, amendment to the contract was unconscionable and that the waiver agreement of November, 1986, was null and void because it was oral. On March 9, 1987, Bondy also filed a separate application to modify the parties' child custody and visitation schedule. Both cases were filed at the magistrate level.

On May 1, 1987, the cases were reassigned to the district court from the magistrate court. On June 8, 1987, Bondy brought a motion for summary judgment on her claim for delinquent payments and a motion to dismiss Levy's counterclaims and to strike certain defenses in his answer. The district court denied the motion Levy had made for an accounting and granted partial summary judgment to Bondy.

The case was subsequently tried on February 27, 1989, and March 13–15, 1989. The district court entered findings of fact and conclusions of law on May 25, 1989. Levy filed his notice of appeal on August 1, 1989.

---

1. *Comm'r v. Lester,* 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961); 4 *The Practical Tax Lawyer* 37 (1990).

■ Appellant raises a number of issues. First, Levy argues that the district court should have dismissed Bondy's complaint because no cause of action against him existed at the time the complaint was filed. Although the district court found after trial that Levy was entitled to roughly $4,000 dollars in offsets for monies he had spent on the children, the district court also found that he was liable for $1,000 per month during the period that he alleged he was disabled and unable to pay. While technically the offsets which were subsequently found exceeded the arrearages on March 9, 1987, the date that the complaint was filed, by the time the case was tried the trial court found that Bondy was entitled to a substantial judgment, even after the offsets for monies Levy had spent on the children. At the time of the filing of the complaint, the amount of the offsets was unliquidated, and within a month or two after the filing of the complaint the amount of the arrearages owed by Levy exceeded the amount of the offsets which the trial court ultimately concluded were justified. By the time that any motions were heard before the district court, the amount owing to Bondy exceeded the unliquidated offset. Accordingly, we find no error in the district court's not dismissing the action on these grounds.

■ Levy argues further that the complaint should have been dismissed under the doctrine of mutually exclusive remedies. Specifically, Levy argues that by filing an action for child support, Bondy was precluded from bringing an action to enforce the contract, as those remedies were mutually inconsistent. "Inconsistency of remedies is defined not as inconsistency between the remedies, but as an inconsistency in the facts relied upon. 'To make

actions inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other.'" *Wolford v. Tankersley*, 107 Idaho 1062, 1067, 695 P.2d 1201, 1206 (1985). I.R.C.P. 8(e)(2) specifically provides that, "A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds or on both." In this case, Bondy was not seeking a remedy based upon inconsistent facts, but was alleging in both proceedings that Levy owed her money for child support. This appears to be the situation analogous to Rule 8(e)(2) of two separate mutually exclusive legal grounds for a single factual claim for child support.[2] Under the circumstances of this case, we do not believe Bondy's action on the contract was inconsistent with or repugnant to her action for child support, or that Levy was unfairly prejudiced by the filing of that action. *Wilson v. Hambelton*, 109 Idaho 198, 706 P.2d 87 (1985). Concededly, the settlement agreement was designed to discharge Levy of his entire support obligation. However, the district court clearly stated that if Bondy was awarded child support, then Levy would be relieved from any further obligation under the agreement or that he would be "entitled to credit for payments made pursuant to magistrate's temporary custody and child support order." Under these circumstances, we find no inconsistency or unfair prejudice resulting to Levy.

■ Next, Levy argues that after he became ill, he and Bondy orally modified the agreement so that he would only be required to pay $500 dollars per month while he was ill and would not be required to make up the balance at some point in the future. Alternatively, Levy argues that

---

**2.** Rule 8(e)(2) permitting the pleading of inconsistent claims contemplates the claims being filed in the same complaint. In this case, the claim for monies due under the contract for child support was filed in a separate complaint with the claim filed with the court to enter an order awarding child support, both of which were filed on March 9, 1987. Filing in separate actions by separate complaints would have made one or the other amenable to dismissal under I.R.C.P. 12(b)(8) which authorizes a mo-

tion to dismiss because "another action [is] pending between the same parties for the same cause." The pleadings do not reflect that such a motion to dismiss was filed in either of the two proceedings. What the record does reflect is that the action filed for breach of the settlement contract proceeded to judgment, and the action for court-awarded child support is still pending in the district court. No claim under Rule 12(b)(8) having been made, we need not address that issue at this time.

Bondy waived her right under the agreement to the $1000 dollar monthly balance that accrued during the period in which Levy was ill. The district court found that the parties only intended that the balance be deferred until Levy recovered and not that such amounts be completely forgiven. The district court stated:

> In late October, 1986, or early November, the parties met and discussed the defendant's illness. Both parties felt that the defendant could not meet the payment obligation of the Agreement. The plaintiff said that the defendant could pay whatever he could afford. He said he could pay at the present level, $500.00, and would do the best he could. He paid $500.00 a month. I find that the parties did mutually agree that lesser payments of $500.00 a month could be made during the period of the defendant's incapacitation. I find no evidence to believe that they intended to suspend the balance permanently.

The factual finding of the district court is supported by the record. Nevertheless, Levy maintains that the agreement was either modified or waived to the extent it required him to pay the full amount during his illness. As to Levy's modification theory, we simply note that, even if the trial court had viewed the facts Levy's way, such a modification would only be valid if it were supported by valid consideration. *Brand S Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981). Here, there was no consideration received by Bondy in return for acceptance of the lower payments. In any event, the trial court found that Bondy had not "intentionally relinquished" her right to the full amount under the contract or that Levy "relied to his detriment" in believing such right had been relinquished, which would be required to sustain Levy's argument that Bondy waived the agreement. *Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (1983). We find no error in the district court's holding.

■ Levy also asserts that the settlement agreement lacks mutuality in that the district court upheld and enforced only those obligations relevant to him while simultaneously excusing Bondy from performance of her obligations. Specifically, Levy argues that Bondy refused to renegotiate in accordance with the agreement despite his request to do so and was therefore in breach of the agreement. As mentioned previously, the agreement provided that in the event the tax consequences of the agreement were changed by legislation or otherwise, the agreement "shall be renegotiated for the purpose of offsetting the resulting shift in income tax burden between the parties." Analyzing this provision in light of the facts of this case, the district court held that this provision was nothing more than an "agreement to agree," and therefore unenforceable. The district court stated:

> Although renegotiation was called for when there was a major shift in the tax bracket, assuming that a shift sufficient to trigger the renegotiation has occurred, the provision is in the nature of an agreement to agree, to form a new agreement at some point in the future based on changed circumstances. Since no new agreement has been entered, there is nothing to enforce. Moreover, the Court cannot create an agreement for the parties. The Court would have to speculate about what the agreement should be....

Our cases have long held that where a contract has been determined to be ambiguous, the court must determine the meaning of the contract by reference to the parties' intent at the time the instrument was drafted. *Thomas v. Campbell*, 107 Idaho 398, 690 P.2d 333 (1984). Although not explicitly stating that the provision in question was ambiguous, the district court implicitly recognized its ambiguity, in part by stating it would have to speculate as to the meaning of any potential agreement. Thus, the district court should have considered the extrinsic evidence of the parties to clarify the meaning of this provision.

However, that was not the only basis for the district court's decision. Alternatively, the district court held that Bondy had not breached the agreement as Levy had made no direct or "clear request" to renegotiate. Levy maintains that such a request was

made in his letter to Bondy dated January 27, 1987.[3] This letter does not clearly and explicitly make demand upon Bondy to renegotiate, although it does indicate that some changes in the tax laws had occurred and implies that a renegotiation might be appropriate. However, contrary to Levy's assertion that Bondy refused this request to renegotiate, the record does not indicate that Bondy rejected renegotiation. In response to Levy's letter of January 27, counsel for Bondy replied by letter dated January 30.[4] That letter does not indicate that Bondy refused or rejected any offer to renegotiate, but merely seemed to indicate that the tax consequences would have to be analyzed to determine if any changes were warranted.

While we reject the district court's legal conclusion that the renegotiation provision was merely an agreement to agree in the future and therefore was not an enforceable provision, we nevertheless affirm the district court's finding that there was no demand for renegotiation and no rejection of a demand. The district court did not err in rejecting Levy's defense that Bondy had breached the contract by refusing to negotiate.

■ In his final argument, Levy asserts that the district court abused its discretion in awarding attorney fees to Bondy. Levy reasons that, "As of the time of the complaint, Marcia's allegations of breach were false," and that, "hers was apparently an attempt to use an illegitimate court barrage of pleadings to exact monetary advan-

tage." Section 19(c) of the settlement agreement provides that:

> If action is instituted to enforce any of the terms of this agreement, then the losing party agrees to pay to the prevailing party all costs and attorneys fees incurred in that action.

The district court below found that Bondy was the prevailing party. The district court found that Bondy's fees were reasonable, given the complex and lengthy issues involved. We believe the district court acted within its discretion and pursuant to the terms of the settlement agreement in awarding attorney fees. We therefore affirm the district court award of attorney fees to Bondy and hold that Bondy is entitled to her attorney fees on appeal pursuant to the agreement as well.

The decision of the district court is affirmed. Costs and attorney fees to Bondy.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

---

**3.** The only reference to renegotiation of the tax changes is as follows:

> The following is a quote from CCH Financial and Estate Planning Report 79 of November 19, 1986.
>
> "The lower tax rates have a profound effect on the alimony payor who under prior law was in a much higher top tax bracket.... For the former 50 percent marginal bracket payor, the $25,000 annual alimony payment that had an after tax cost of $12,500 will now have a cost of $18,000 if he finds himself in the 28 percent marginal tax bracket...."
>
> You may recall that our agreement contemplated a change in tax law and provided for renegotiation to preserve tax benefits when the law changed.

....

> Lastly, to avoid more empty promises, threats, antagonism, defamation, etc., I suggest that no negotiations be had between ourselves.

**4.** That letter stated in pertinent part, "I believe the issues that need to be addressed include, but are not limited to: ...; 2. Proposed changes of maintenance based on tax consequences. I will propose a change of maintenance to child support if the tax analysis illustrates that the purpose of the agreement can be carried out more fully with this change; ...." Other than this reference to the tax consequences, there is no reference to a request to renegotiate, and certainly no rejection of a request to renegotiate.