829 P.2d 1342

**Marcia Kahn BONDY, Plaintiff–Respondent,**

v.

**Paul E. LEVY, Defendant–Appellant.**

**No. 18798.**

Supreme Court of Idaho,
Boise, December 1991 Term.

March 31, 1992.

Rehearing Denied June 1, 1992.

Levy Law Offices, Boise, for defendant-appellant. Paul E. Levy, argued.

Cosho, Humphrey, Greener & Welsh, Boise, for plaintiff-respondent. Stanley W. Welsh, argued.

BOYLE, Justice.

## I.

Paul E. Levy and Marcia K. Bondy were divorced on May 31, 1985. The divorce decree contained a Custody and Property Settlement Agreement which had been entered into by the parties on March 21, 1985 and which was subsequently amended in April of 1985. Although the child custody and support provisions of the agreement were merged into the judgment and decree of divorce, the remainder of the agreement survived as a binding contract. In February of 1989, Bondy brought a civil action seeking recovery of all payments due under § 9 [1] of the agreement. In a memorandum decision, the trial court [2] awarded a judgment of $18,250 which represented all monies due under the settlement agreement through February 15, 1989. Levy appealed

---

**1.** The pertinent portion of § 9 of the agreement provides:

*Section 71 Payments* Husband shall pay to Wife in cash on a non-modifiable basis on the first and fifteenth day of each month commencing April 1, 1985:

a) $750 through March 15, 1990; and
b) $550 through July 15, 1998.

**2.** The first action, *Bondy I,* was assigned to Hon. Deborah Bail. This current action was assigned to Hon. Duff McKee.

the trial court's decision to this Court and we issued our first decision in *Bondy v. Levy (Bondy I)*, 119 Idaho 961, 812 P.2d 268 (1991). In *Bondy I*, we described a portion of the agreement between these parties as follows:

> This type of agreement is known as a "Lester" agreement, entitling the parties to certain tax benefits.[3] Typically, such agreements require the husband to make payments of a certain amount and allow him thereafter to obtain a deduction from taxes for the payment. Through the agreement, Levy provided Bondy with funds which she would use to provide for all the children's needs. The payments were $1,500 a month, $1,000 of which was used to cover all the children's needs, and $500 of which was allowed to cover "overhead," including Bondy's income tax costs resulting from the support arrangement.

*Bondy*, 119 Idaho at 963, 812 P.2d at 270.

While *Bondy I* was pending on appeal, and despite Levy's filing of a supersedeas bond in an appropriate amount, Bondy brought the instant action in district court to recover those payments due and owning subsequent to February 15, 1989. Levy requested a stay and filed numerous motions, including a Motion to Dismiss. The Motion to Dismiss was denied by the trial court and the motion for a stay was taken under advisement. Thereafter, the trial court granted Bondy's motion for summary judgment and denied Levy's motion for a stay of the proceedings. Levy appeals the trial court's denial of his motions and granting summary judgment in favor of Bondy.

## II.

While it may have been preferable for the trial court below to have stayed the proceedings pending our decision in *Bondy I*, we are unable to consider the trial court's denial of Levy's motion to dismiss or request for a stay because the record before us does not contain the basis for Levy's motions.[4] *See, Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987) (appellant has burden on appeal of presenting sufficient record and Supreme Court is bound by record presented on appeal); *State v. Hodges*, 103 Idaho 765, 653 P.2d 1177 (1982).

Therefore, our review is limited to the trial court's granting of summary judgment in this instant action. Bondy moved for summary judgment relying primarily upon the district court's conclusions in *Bondy I* and the provisions of the settlement agreement. Levy responded arguing that a duty to renegotiate existed under the contract due to a change in tax brackets, that the agreement provided for payments to Bondy to cease in the event of her remarriage or cohabitation, and that the underlying purpose of the contract had been frustrated by Bondy's refusal to support the children with the funds paid by him pursuant to the agreement. The trial court granted Bondy's motion for summary judgment concluding that renegotiation was not required because §§ 71 and 215 of the Internal Revenue Code had not been amended.[5] The trial court held that Levy's other claims were immaterial.

It is well established that a motion for summary judgment is to "be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c); *McCoy v. Lyons*, 120 Idaho 765, 820 P.2d 360 (1991); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990). Furthermore, when determining whether a motion for summary judgment should be granted, all dis-

---

**3.** *Commissioner of Internal Revenue v. Lester*, 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961); 4 *The Practical Tax Lawyer* 37 (1990).

**4.** The record suggests that a memorandum in support of Levy's motion to dismiss or for a stay was filed with the trial court, but such memorandum does not appear in the record.

**5.** At the time the district court rendered its decision in the instant action it did not have the benefit of our decision in *Bondy I*.

puted facts are to be liberally construed in favor of the non-moving party, and all reasonable inferences which can be made from the record shall be made in favor of the party resisting the motion. *McCoy v. Lyons,* 120 Idaho 765, 820 P.2d 360 (1991); *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 808 P.2d 851 (1991); *Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37 (1990).

■ When considering an appeal from a motion for summary judgment, our standard of review is the same as the standard used by the trial court in passing on the motion for summary judgment. *McDonald v. Paine,* 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic,* 105 Idaho 509, 670 P.2d 1294 (1983). Accordingly, our task on appeal is to apply these rules to the record before us and determine whether there exists a genuine issue of material fact and whether Bondy is entitled to judgment as a matter of law. In making this determination, we are required to review and consider the totality of the motions, affidavits, depositions, pleadings and attached exhibits contained in the record. *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986).

. A.

In considering Levy's claim that the contract called for renegotiation, the trial court analyzed Section 9.03 of the settlement agreement which provides:

> 9.03 *Tax Treatment:* The parties enter into this agreement with the understanding that these payments will be deductible to Husband and includable in Wife's income pursuant to § 71 and § 215 of the Internal Revenue Code. If by legislation or otherwise these tax consequences are changed, this agreement shall be renegotiated for the purpose of offsetting the resulting shift in income tax burden between the parties.

In considering this provision of the settlement agreement, the trial court noted:

Section 71 of the Internal Revenue Code had not been amended since the contract was signed in 1985. It remains in force. While the Tax Reform Act of 1986 did change the tax brackets, it did not alter or amend the provisions of section 71, nor did it operate to shift the tax burden between the parties on account of section 71 payments. While I acknowledge that the change in tax brackets might have made the tax treatment less advantageous to the defendant, the amendments did not change the structure of deductibility under section 71, which was the object of the provisions of section 9.03 of the contract.

. . . .

I think this clause is clear and unambiguous in providing that the obligation to renegotiate shall be triggered only if section 71 is amended and there is a change in the deductibility of payments. No such change in deductibility has occurred.[6]

■ It is well established in Idaho that when construing a party's settlement agreement, normal rule of contract construction apply. *See, Wolford v. Wolford,* 117 Idaho 61, 785 P.2d 625 (1990); *Spencer–Steed v. Spencer,* 115 Idaho 338, 766 P.2d 1219 (1988). The primary objective in construing a contract is to discover the intent of the parties, and in order to effectuate this objective, the contract must be viewed as a whole and considered in its entirety. *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984); *Beal v. Mars Larsen Ranch Corp.,* 99 Idaho 662, 586 P.2d 1378 (1978); *Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App.1982). The primary consideration in interpreting an ambiguous contract is to determine the intent of the parties. *See Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984). The determination of a contract's meaning and legal effect are questions of law to be decided by the court where the contract is clear and unambiguous. *Galaxy Outdoor Advertising Inc. v. Idaho Transportation Department,* 109 Idaho

---

**6.** Had the trial court stayed the proceedings, it would have had the benefit of our decision in *Bondy I* and its conclusions would likely have been different.

692, 710 P.2d 602 (1985). However, where a contract is determined to be ambiguous, the interpretation of the document presents a question of fact which focuses upon the intent of the parties. *See, Ramco v. H–K Contractors, Inc.,* 118 Idaho 108, 794 P.2d 1381 (1990); *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984). The determination of whether a contract is ambiguous or not is a question of law over which we may exercise free review, *see Ramco v. H–K Contractors, Inc.,* 118 Idaho 108, 794 P.2d 1381 (1990); *DeLancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986); *Pocatello Industrial Park, Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980); *Prouse v. Ransom,* 117 Idaho 734, 791 P.2d 1313 (Ct.App.1989), and in determining whether a contract is ambiguous, our task is to ascertain whether the contract is reasonably subject to conflicting interpretation. *Spencer–Steed v. Spencer,* 115 Idaho 338, 766 P.2d 1219 (1988); *De-Lancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986).

 After carefully reviewing the record before us, we are satisfied that a reasonable conflicting interpretation exists because the language referring to a change in tax consequences can reasonably be construed to require renegotiation in the event a shift in tax brackets occurs which affects the real cost involved in making payments pursuant to the agreement.[7] Because we hold this provision of the contract is ambiguous, an issue of material fact exists which would preclude entry of summary judgment. Accordingly, on remand the trial court should determine what the parties intended by this provision of the contract, and whether a change in the tax consequences has occurred sufficient to trigger the renegotiation provision.

### B.

Pursuant to the April, 1985 amendments to the agreement, Levy assumed a continued obligation to make payments under the contract in the event of Bondy's remarriage. The agreement as amended provided in pertinent part:

> These payments will not terminate if the wife remarries. Upon remarriage, if husband elects, the money will be deposited in a checking account under supervision of a trustee. Money for the children's food, shelter, clothing, schooling, toys, lessons and activities will be drawn from this account by the wife. In addition, taxes placed upon this money can be withdrawn.

Levy submitted an affidavit stating that the parties clearly intended the term "remarriage" to encompass a cohabitation situation and suggests that Bondy was in fact cohabiting. Levy asserts that his affidavit raised questions of material fact that preclude granting of summary judgment in this case. We disagree.

 The determination and legal effect of a contractual provision is a question of law where the contract is clear and unambiguous, and courts cannot revise the contract in order to change or make a better agreement for the parties. *Galaxy Outdoor Advertising Inc. v. Idaho Transportation Department,* 109 Idaho 692, 710 P.2d 602 (1985). Accordingly, unless the term "remarriage" is viewed as being ambiguous, the effect of this contractual provision is a matter of law. Unlike the prior discussion regarding a duty to renegotiate upon a change in tax consequences, we are unable to conclude that this provision is ambiguous because the term "remarriage" is not subject to reasonable conflicting interpretations. Therefore, we do not read the "remarriage" provision as encompassing a cohabitation situation. We hold Levy's affidavit does not trigger the trust provision of the agreement, nor would it have precluded granting of summary judgment on this issue. Accordingly, we affirm the district court's order granting summary judgment on this issue.

### C.

Levy contends that notwithstanding the contract designation as § 71 payments, the

---

7. The record indicates that as a result of a change in the tax brackets, Levy's after tax costs on a $18,000 annual payment increased from $9,360 in 1986 to $12,960 in 1987 and 1988.

funds he is required to pay under the contract were intended solely for support of the children, and that Bondy's use of those funds in support of the children was clearly a condition to his obligation to pay. Bondy on the other hand contends that the payments are for her support and maintenance only, and that she is free to utilize the funds any way she chooses. The trial court concluded that because § 71 payments do not involve child support considerations, Levy's duty to pay was not affected.

We note that the facts of the instant case are similar to *Kohn v. Kohn,* 242 Pa.Super. 435, 364 A.2d 350 (1976). In *Kohn,* the parties entered into an agreement similar to the one at issue. The appellant husband was contractually obligated to make payments designated as "alimony" and the respondent wife was responsible for all child support. The "alimony" designation was apparently used so that the husband might obtain advantages pursuant to *Commissioner of Internal Revenue v. Lester,* 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961). Subsequently, in *Kohn,* the husband was awarded custody of the minor children. He then ceased making the "alimony" payments on the basis that the payments were in fact intended as child support. The wife argued that the payments were clearly designated as "alimony" and objected to the husband's use of parol evidence to show a contrary intent or meaning. The trial court sustained the wife's objection, determined that the agreement was not ambiguous and found the husband in breach of the settlement contract. On appeal, the court in *Kohn* noted that while a word may be generally used for its ordinary meaning, the context of the instrument, when viewed as a whole may demonstrate that a different meaning was actually intended. *Kohn,* 364 A.2d at 354. The court then examined the language of the document concluding that the term "alimony" was ambiguous in light of tax incentives to term the payments as such even though the ultimate purpose may have been to provide for the children. *Id.* Accordingly, the court concluded that extrinsic evidence was necessary to determine

the intent of the parties with regard to the purpose of the payments. Noting that the parties had expressed a limited number of events that would condition the appellant's obligation to make continual payments, none of which were applicable to the appellant's claim, the court nonetheless reversed and remanded the case for a factual determination as to whether an implied condition existed that would alleviate the appellant from making future payments. *Id.,* 364 A.2d at 355.

The primary objective in construing a contract is to discover the intent of the parties, and in order to effectuate this objective, the contract must be viewed as a whole and considered in its entirety. *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984); *Beal v. Mars Larsen Ranch Corp.,* 99 Idaho 662, 586 P.2d 1378 (1978). Furthermore, unless an ambiguity is found, the legal effect and interpretation of a contract is a matter of law. *Galaxy Outdoor Advertising Inc. v. Idaho Transportation Department,* 109 Idaho 692, 710 P.2d 602 (1985). Accordingly, we must determine whether a reasonable conflicting interpretation exists indicating an ambiguity regarding the purpose of the payments.

■ The terms of the agreement in the instant action demonstrating that the § 71 payments may have been intended as child support are that payments were to continue in the event of Bondy's remarriage and that the amount was to be renegotiated in the event of a change in tax consequences. Further the agreement provided that Bondy was to refund two-thirds of the payments for those periods of time in which Levy had majority custody of the children for any two week period and the contract contained a spendthrift clause limiting Bondy's use of the funds. We also note that § 10 of the original agreement, which section was merged into the divorce decree, required Bondy to assume all child support obligations, and with limited exception, relieved Levy of all child support obligations under the agreement.

After thoroughly reviewing the terms of the agreement, we are satisfied that rea-

sonable conflicting interpretations exist regarding the purpose of the § 71 payments and that therefore, the provision is ambiguous. Furthermore, because extrinsic evidence of the parties intent is required to resolve this ambiguity, we hold that genuine issues of material fact exist that preclude entry of summary judgment in this issue. On remand, if the evidence submitted indicates that payments were intended for child support, the trial court should also consider whether the parties intended an implied or constructive condition that the payments be used to support the children. As the Court in *Kohn* noted:

> It very often happens that when two parties are trying to integrate their agreement in a writing they omit to state some fundamental assumption on the basis of which, as both of them well know, the agreement is being made. The mere existence of the writing should never be held to exclude testimony of such an unstated fundamental assumption. The truth of this assumption—the existence of the fact that is assumed—is a condition of the obligation of the written promise; and this is so whether we describe it as a constructive condition or as an implied condition.

> The parties put into words their agreement on obviously necessary items, without foresight as to the events of the future, leaving unexpressed some of the fundamental assumptions of which they may be either clearly or only partly conscious. Justice requires the courts, with the advantage of hindsight, to fill some of these gaps. Evidence of the facts tending to show that such a fundamental assumption was made, though not expressed in the writing, should never be excluded.... (Citations omitted).

*Kohn*, 364 A.2d at 350. This well reasoned analysis is consistent with well established contract principles. *See Davis v. Professional Business Services*, 109 Idaho 810, 712 P.2d 511 (1985) wherein we held that in every contract there exist not only the express promises set forth in the contract but all such implied provisions as are necessary to effectuate the intention of the parties, and as arise from the specific circum-

stances under which the contract was made. (citing *Wiles v. Wiles*, 202 Kan. 613, 452 P.2d 271 (1969)) (provisions not specifically mentioned in a written contract, but which are essential in carrying out its purposes, may be implied, and, when properly implied, are as binding as if written therein).

### III.

In conclusion, we hold that § 9.03 of the agreement requires evidence of the parties intent regarding what changes trigger the renegotiation provision. As a result, a genuine issue of material fact exists which precludes granting of summary judgment. We likewise hold that an ambiguity exists with regard to the underlying purpose behind the payments, and that the need for extrinsic evidence to make such determination precludes the entry of summary judgment in this case. Finally, we hold that the "remarriage" provision is not ambiguous and that evidence of cohabitation does not trigger the trust provision of the agreement. In light of our holding the district court's award of attorney fees to Bondy is vacated. The judgment of the district court is affirmed as to the "remarriage" issue but otherwise is reversed and remanded for further proceedings in accordance with this opinion and to consider our prior instruction in *Bondy I.*

Costs to appellant. No fees awarded on appeal.

BAKES, C.J., and JOHNSON, J., concur.

BISTLINE, Justice, dissenting.

I join Justice McDevitt's dissenting opinion. In addition, I dissent to the majority's finding that "an ambiguity exists with regard to the underlying purpose behind the [§ 71] payments, and that the need for extrinsic evidence to make such a determination precludes the entry of summary judgment in this case." Absolutely *no* facial ambiguity exists in § 9 of the parties' agreement. Section 9 designated certain payments from Levy to Bondy as § 71 payments, referring to § 71 of the Internal Revenue Code. That code section deals

specifically and solely with *alimony and separate maintenance payments,* and as such the "§ 71 payments" in the agreement must be viewed as alimony or maintenance payments.

The majority correctly states that a contract is ambiguous if it is reasonably subject to conflicting interpretation. However, the ambiguity must be found within the four corners of the document, unless it contains absurdities or contradictions. *Suchan v. Suchan,* 106 Idaho 654, 682 P.2d 607 (1984). *See also Boesiger v. DeModena,* 88 Idaho 337, 399 P.2d 635 (1965) (intent of parties to written agreement is to be ascertained from the language contained therein); *McCallum v. Campbell–Simpson Motor Co.,* 82 Idaho 160, 349 P.2d 986 (1960) (a contract must be construed according to the plain language used by the parties); *Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319 (Ct.App.1985) (when the language of a contract is clear, the meaning of that contract and the intent of the parties must be determined from the plain meaning of the contract's own words). Most importantly, the intention of the parties to a contract is determined by what intention is expressed by the language used; the issue is *not* the intention existing in the minds of the parties. *Tapper v. Idaho Irr. Co.,* 36 Idaho 78, 210 P. 591 (1922).

Here, the majority chooses to ignore the plain and clear language of the parties' agreement which defines the payments in question as § 71 payments. Further, the majority infers the existence of an ambiguity by reference, in part, to information outside the contract. Because the terms of the agreement are not ambiguous, extrinsic evidence of any purported "underlying purpose" of the payments cannot properly be admitted. This is in contravention of the parol evidence rule, because any extrinsic evidence will necessarily contradict the plain meaning and implications of "§ 71 payments."

For these reasons, I dissent from the majority opinion.

McDEVITT, Judge, dissenting:

I cannot concur in the analysis of the Court that results in the determination that section 9.03 of the settlement agreement entered into by the parties is ambiguous. I therefore dissent.