Bruce **ROEMMICH** and Pamela **Roemmich, individually and as conservators and next friends of Jennifer Roemmich, Plaintiffs–Appellants,**

v.

**LUTHERAN HOSPITALS & HOMES SOCIETY OF AMERICA, a North Dakota corporation, d/b/a McKee Medical Center, Defendants–Appellees.**

No. 95CA1578.

Colorado Court of Appeals, Div. V.

Dec. 27, 1996.

Rehearing Denied Feb. 6, 1997.

Kenneth L. Keene, Jr., Denver, Spence, Moriarity & Schuster, J. Douglas McCalla, Jackson, WY, Sorensen & Konkel, Douglas D. Konkel, Fort Collins, for Plaintiffs–Appellants.

Long & Jaudon, P.C., Gary B. Blum, Michael T. McConnell, James M. Miletich, Denver, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

Plaintiffs, Bruce and Pamela Roemmich, appeal the judgment entered by the trial court dismissing their claims against defendant, Lutheran Hospitals & Homes Society of America, for breach of the parties' settlement agreement. We affirm.

In 1983, plaintiffs commenced a medical malpractice action against defendant for injuries suffered by their minor child while she was under defendant's care. In 1984, the parties reached a settlement. A settlement agreement and two accompanying releases were filed in the probate court. The settlement agreement required defendant to make an initial cash payment of $1,750,116 and to purchase an annuity which would pay $7,930 per month for the life of the child or 30 years certain. The releases executed by plaintiffs provided that, for consideration of the purchase by defendant of the annuity contract, plaintiffs agreed to release defendant from all claims.

In accordance with these documents, defendant made the initial cash payment and purchased three annuities (an annuity contract) from Executive Life Insurance Company (Executive). The annuity contract provided for income payments to plaintiffs of $7,930 per month for 360 months, beginning June 1, 1984.

In 1991, the payments, which had been regularly made, were substantially reduced because of Executive's financial difficulties and subsequent bankruptcy filing. Plaintiffs then filed a complaint against defendant to recover the unpaid amounts, arguing that defendant's failure to insure the full monthly payments constituted a breach of the settlement agreement. Defendant answered and counterclaimed for a declaratory judgment determining the rights and obligations of the parties under the settlement agreement.

In its motion for declaratory judgment, defendant contended that its obligation to plaintiffs under the settlement agreement was to make the initial cash payment and to purchase an annuity contract. Having done so, it contended its obligation to plaintiffs was discharged and that the claims against it should be dismissed.

The trial court agreed with defendant that, in addition to an initial cash payment, defendant was to purchase, but not guarantee the performance of, an annuity contract. Further concluding that defendant had performed both of these duties, the trial court declared defendant's obligation under the settlement agreement executed and dismissed plaintiffs' claims for breach.

I.

Plaintiffs contend that the trial court erred in dismissing their claims, arguing that the

dismissal was based on an incorrect interpretation that defendant's obligation under the settlement agreement was executed rather than executory. We disagree.

■ The interpretation of a contract is a question of law for the court. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

■ A court's duty is to interpret a contract in a manner which effectuates the manifest intention of the parties at the time the contract was signed. *Neves v. Potter*, 769 P.2d 1047 (Colo.1989). The touchstone in determining the intention of the parties is the language of the written agreement. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

■ In addition, contract interpretation should rest on good sense and a plain understanding of the words used and the acts directed to be performed, *Neves v. Potter, supra,* and words and phrases in the contract should be interpreted, not in isolation, but by examination of the contract as a whole. *Kuta v. Joint District No. 50(J)*, 799 P.2d 379 (Colo.1990). Finally, documents executed together as part of a single transaction should be considered together in ascertaining the intent of the parties. *Bledsoe v. Hill*, 747 P.2d 10 (Colo.App.1987).

■ Here, the settlement agreement provided in pertinent part:

[Defendant] will pay to [plaintiffs] the sum of $1,750,116 in cash and will purchase an annuity which will pay $7,930.00 per month commencing June 1, 1984 ($95,160 per year) for the life of [the child], 30 years certain, compounding annually at 6%. The guaranteed amounts are as follows: Cash—$1,750,116; Annuity payments—$7,523,179; Total—$9,273,295. The total payout of the annuity, assuming [the child] lives to her life expectancy will be $116,-701,050.

The plain language of the settlement agreement indicates that the parties intended defendant to "pay" plaintiffs a specified sum in cash and to "purchase" an annuity which would pay a specified amount per month.

Unmistakably absent are terms stating that the plaintiffs settled for a series of future payments, or any express terms directing defendant to "make," to "insure," or to "guarantee" payments of a specified amount per month. Such terms would indicate that the parties intended defendant's obligation to be executory, that is, to protect plaintiffs' interest beyond the cash payment and the purchase of the annuity contract. *See generally Linebarger v. United States*, 927 F.Supp. 1280 (N.D.Cal.1996) (when settlement agreement provided that party "shall purchase an annuity contract with the Executive Life Insurance Company," party's only obligation under terms of agreement was to purchase the annuity); *Gray v. Farmland Industries, Inc.*, 529 N.W.2d 514 (Minn.App. 1995) (when settlement agreement provided that party shall purchase an annuity contract with a reputable insurance company, and Executive Life Insurance Company was chosen, party did not have obligation to guarantee the annuity).

Plaintiffs argue, however, that language following the express provision that defendant "will purchase an annuity" implies precisely this. Specifically, plaintiffs argue that the language set forth above, providing that the annuity "will pay" a set amount for a fixed length of time and that the "guaranteed amounts" reflect such payments, indicates that defendant's obligation was to deliver monthly payments to plaintiff until such time as the guaranteed amounts set out in the agreement are paid. Thus, they argue, the annuity defendant purchased was simply a "payment vehicle" to effectuate this "executory" obligation and defendant was, in effect, guarantor of the performance of this obligation by Executive, or any other entity, who contracted with defendant to fulfill their monthly obligation. We conclude that the language in the settlement agreement does not support plaintiffs' interpretation.

The trial court concluded, and we agree, that the language upon which plaintiffs premise their argument describes the value and nature of the annuity defendant was to purchase to fulfill its obligation to plaintiffs, rather than a guarantee that the annuity

purchased will faithfully perform over a period of years.

Our reasoning is several-fold. First, the descriptive language in issue is introduced by "which," a pronoun usually employed to explain and refer to the noun preceding it. *See generally* M. Freeman, *The Grammatical Lawyer* 38 (1979). We can conceive of no reason that this is not the purpose of the descriptive language here inasmuch as the language follows the express provision directing defendant to purchase an "annuity" and the language parallels the precise terms found in the annuity contract. Indeed, as the trial court noted:

> An agreement merely that an annuity would be purchased, without stating the amount of the annuity or the amount of the payments under the annuity would be meaningless ... The [clauses] provide ... definition.

Moreover, to construe this language as qualifying defendant's obligation, rather than the annuity, would impose a substantial financial obligation on defendant. A review of the entire agreement discloses no language conferring on defendant such a substantial obligation. To the contrary, the releases executed in conjunction with the settlement agreement fail to recite this descriptive language, stating, instead, that plaintiffs' release and discharge of defendant is based in part on the consideration of defendant's *purchase* of an annuity contract.

We conclude that a good sense and contextual reading of the settlement agreement reveals that the parties intended defendant's obligation to plaintiffs to consist only of a cash payment and the purchase of an annuity which satisfied the description set forth in the agreement.

■ Nor does the parties' use of the word "guarantee" alter this conclusion. Even considered in conjunction with the descriptive language discussed above, the use of this term is insufficient to imply that defendant was obligated to guarantee the annuity payments.

■ The use of the word "guarantee" will not imply a personal agreement in the absence of mutual assent and consideration, neither of which is revealed here in the language of the settlement agreement or the language of the releases. *A.R.A. Manufacturing Co. v. Cohen,* 654 P.2d 857 (Colo.App. 1982). Indeed, a meaning of the word "guarantee" that is gathered from the context of the agreement as a whole and from the subject matter the agreement addresses "will more surely give the [word] that meaning which will carry out the true intent of the parties." *McCallum v. Campbell–Simpson Motor Co.,* 82 Idaho 160, 349 P.2d 986, 989 (1960).

We conclude, as did the trial court, that the phrase "guaranteed amounts" refers to a term of the annuity contract, specifically that the payment period is to be "for life of [the child], but 30 years certain." *See also Gray v. Farmland Industries, Inc., supra.*

## II.

Alternatively, plaintiffs contend that the settlement agreement must be set aside in equity as inequitable and unconscionable. However, inasmuch as the provisions of the settlement agreement are clear and unambiguous, we decline to do so.

■ As noted above, if the parties had intended that defendant would be bound until such time as the "guaranteed amounts" are paid, such intent could have been expressed in the settlement agreement in several different ways. That the parties failed to include such expression is not grounds to set the settlement agreement aside. *See generally Recreational Development Co. v. American Construction Co.,* 749 P.2d 1002 (Colo.App. 1987).

In light of our disposition of plaintiffs' first contention of error, we find it unnecessary to address their remaining contentions relating to the interpretation and construction of the settlement agreement.

The judgment is affirmed.

RULAND, J., concurs.

MARQUEZ, J., dissents.

Judge MARQUEZ dissenting.

I respectfully dissent. In my view, the plain language of the contract establishes that defendant was obligated to purchase an annuity that would pay the specified amounts for the life of the child, not merely to purchase an annuity promising life-long payments. Defendant has not met that obligation.

A settlement agreement is a contract and must be construed and enforced like any other contract. *Recreational Development Co. v. American Construction Co.,* 749 P.2d 1002 (Colo.App.1987). An unambiguous contract will be enforced according to the express provisions of the contract, giving words their plain and generally accepted meaning. *Heller v. Fire Insurance Exchange,* 800 P.2d 1006 (Colo.1990).

According to the agreement: "[Lutheran] will pay to Roemmich the sum of $1,750,-116.00 in cash and *will purchase an annuity which will pay* $7,930.00 per month commencing June 1, 1984 ($95,160.00 per year) *for the life* of Jennifer Roemmich, 30 years certain, compounding annually at 6%." (emphasis added)

The word "will" is an auxiliary verb commonly having the *mandatory* sense of "shall" or "must." Black's Law Dictionary 1433 (5th ed. 1979). In the agreement, "will" refers both to "purchase" and "pay"; thus, defendant was obligated to purchase an annuity that would pay the specified benefits for the life of the child. The "will pay" language specifies that this specific payment of money shall continue throughout Jennifer Roemmich's life. The subsequent bankruptcy of the initial insurance company does not change the terms of the contract.

In my view, from reading the plain language of the contract, the defendant's obligation was to assure that monthly payments were delivered to plaintiffs until such time as the specific amounts set out in the agreement are paid.

This interpretation is not unreasonable, especially considering that defendant, not plaintiffs, was the owner of the annuity. *Cf. Gray v. Farmland Industries, Inc.,* 529 N.W.2d 514, 516 (Minn.App.1995) (settlement agreement provided that "defendants shall *purchase and deliver* to Donald Gray, as father and natural guardian of Kristine Gray, an annuity")(emphasis added).

The majority reasons that its interpretation of the contract is proper because "to construe this language as qualifying defendant's obligation, rather than the annuity, would impose a substantial financial obligation on the defendant." However, in my view, the substantial financial obligation is better borne by defendant who chose to satisfy its obligation by this form of agreement. Based on this record, defendant could have specified more clearly that its obligation ended by merely purchasing the annuity or by affirmatively stating that it was not obligating itself as a guarantor.