# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49189

XANTHA J. DARROW, fka XANTHA J. WHITE,

   Plaintiff-Counterdefendant-
   Appellant,

v.

TODD WHITE, individually, and as Trustee of the John Embleton White & Carma G. White Revocable Family Trust, and WHITE X THREE, LLC, an Idaho limited liability company,

   Defendants-Counterclaimants-
   Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Twin Falls, August 2022 Term

Opinion Filed: June 27, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Benjamin J. Cluff, District Judge.

The decision granting summary judgment is <u>reversed</u> and the case is <u>remanded</u>.

Elam & Burke, P.A., Boise, for Appellant Xantha Darrow. Jaclyn T. Gans argued.

Robertson & Slette, PLLC, Twin Falls, for Respondents Todd White and White X Three, LLC. Gary D. Slette argued.

---

STEGNER, Justice.

This appeal concerns the 2008 sale of real property located in Twin Falls, Idaho ("the Property"). The Property was owned by the partnership White, White & Lawley I ("WWLI"), which sold the Property to White X Three, LLC, for $650,000. In 2009, after White X Three acquired and then substantially renovated the Property, it began to lease the Property to Wilson-Bates Appliance Stores, Inc., for an initial amount of $21,000 per month, which increased annually by 1.5%.

At the time of the sale, Xantha White, then a minor child, and Todd White, her uncle, each held a one-half interest in the White Family Trust. The White Family Trust was a one-third partner

in WWLI when it sold the Property. As Trustee of the White Family Trust, Todd White—along with the other two partners of WWLI—agreed to the sale of the Property. Todd White was also a member of White X Three, placing him on both sides of the sale and purchase of the Property. Although he had a conflict of interest in the sale, Todd White did not obtain court approval for the sale pursuant to Idaho Code section 68-108(b), nor did he inform Xantha White or her mother, who was also Xantha's conservator, of the sale. Exactly when Xantha White learned of the sale is disputed by the parties.

Xantha White (now known as Xantha Darrow) and the Trustee of the Xantha J. White Trust, Larry Braga, brought suit against Todd White and White X Three, asserting that, because Todd White did not obtain court approval for the sale of the Property, the sale was void and the Property should be placed in a constructive trust. Both parties moved for summary judgment. The district court granted partial summary judgment in favor of Todd White and White X Three, concluding that the sale of the Property was not void because Idaho Code section 68-108(b) did not apply. The district court also declined to place the Property in a constructive trust but allowed Xantha Darrow's claim of breach of a fiduciary duty to continue.

Xantha Darrow moved the district court for an Idaho Rule of Civil Procedure 54(b) certification to allow her to appeal the partial judgment rendered against her. The district court granted her request, and this appeal followed. For the reasons discussed below, we vacate the district court's grant of summary judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

John and Carma White formed the White Family Trust in 1982. After John[1] and Carma both passed away in 1997, their two sons—Kevin and Todd White—each received a one-half interest in the White Family Trust. At all times relevant to this appeal, Todd was the sole Trustee of the White Family Trust.[2] Kevin passed away in 1999, at which time his one-half interest in the White Family Trust devolved to his daughter, Xantha. From 1999 to the present, both Todd and Xantha have been the only beneficiaries of the White Family Trust.

---

[1] For clarity, the individuals in the White family will be referred to by their first names. No disrespect is intended by doing so.

[2] It can be inferred from the parties' briefing that Kevin acted as a co-Trustee with his brother, Todd, from the time of their parents' death until Kevin's. However, Kevin's designation as co-trustee cannot be confirmed by the record.

2

The White Family Trust was a one-third partner in WWLI, a partnership established in 1985. The other two partners of WWLI were Wallace Richard White, Sr. (Todd's uncle, who is also known as Rick Sr.), and Marilyn Lawley (Todd's aunt). In 1998, WWLI purchased the Property for $420,000.

In the spring of 2008, WWLI decided to sell the Property for $650,000. Todd, in his capacity as Trustee of the White Family Trust, approved the sale of the Property for $650,000. In 2007, prior to WWLI agreeing to the sale, Twin Falls County assessed the value of the Property to be $675,305; however, in 2008—after WWLI had agreed to the sale details but before the transaction actually occurred—the Twin Falls County's Assessor assessed the value of the Property to be $807,261. At no point did Todd seek or obtain court approval of the sale of the Property. Xantha's share of the proceeds from the sale was $95,000, which was remitted to Garald Price in his capacity as Trustee of Xantha's personal trust, the Xantha J. White Trust (established in 2002). Xantha was twelve years old at the time.

WWLI sold the Property to White X Three, a limited liability corporation with three members: Todd, Rick Sr., and Richard M. White (Rick Sr.'s son). White X Three financed the sale by taking a loan from Wilson-Bates Appliance Stores, Inc., an entity in which the White Family Trust has an interest. White X Three then obtained a loan from Wells Fargo in 2009 for approximately $2 million, a portion of which was used to repay the Wilson-Bates loan. White X Three used the rest of the Wells Fargo loan to finance construction costs for a remodel of the warehouse on the Property. The renovated warehouse was then leased to Wilson-Bates for $21,000 per month, beginning in 2009 with the rent set to increase 1.5% each year.

In 2016, Larry Braga replaced Price as the Trustee of the Xantha J. White Trust. Braga began attending shareholder meetings of Wilson-Bates and discovered Xantha previously had, but no longer retained, an interest in the Property.[3] This litigation followed.

## B. Procedural Background

On March 27, 2020, Xantha, individually, and Braga, in his capacity as Trustee of the Xantha J. White Trust, filed a complaint against Todd and White X Three contesting the propriety of the sale of the Property. Xantha and Braga alleged three separate causes of action. First, Xantha and Braga asserted the sale of the Property was void because a court had not authorized the

---

[3] Todd and White X Three dispute that Xantha learned of the sale in 2016. The district court concluded that when Xantha knew or should have known about the sale remains a question of fact; therefore, this conclusion is not before us on appeal.

3

transaction pursuant to Idaho Code section 68-108(b). Second, Xantha and Braga requested that the Property be placed into a constructive trust due to the void sale. Finally, Xantha and Braga asserted Todd had breached his fiduciary duty owed to Xantha in agreeing to the sale of the Property.

Todd and White X Three filed their answer on April 30, 2020, which asserted three counterclaims. First, Todd and White X Three sought a declaration that Section W of the Trust Indenture provided the Trustee of the White Family Trust with the power "to determine the wisest and best course of action to pursue" without obtaining court approval, and that Todd's actions in consenting to the sale of the Property complied with Section W. Second, Todd and White X Three sought a declaration that Xantha's and Braga's complaint violated the incontestability provision of the Trust Indenture, and that they "must thereby forfeit and disgorge any and all beneficial interests thereunder." Finally, Todd and White X Three sought a declaration quieting title against Xantha and Braga to the Property.

Xantha and Braga moved for summary judgment on their first cause of action as well as all three of Todd's and White X Three's counterclaims. Todd and White X Three also moved for summary judgment on all three of their counterclaims, and further asserted that Xantha's and Braga's complaint was barred by the applicable statute of limitations pursuant to either Idaho Code section 5-217 or Idaho Code section 5-224.

The district court first found that Todd had a clear conflict of interest in consenting to the sale of the Property such that, "absent any other facts," he would have been subject to the requirement to obtain court approval for the sale pursuant to Idaho Code section 68-108(b). The district court further found that "the terms of the [Trust Indenture] unquestionably supersede the provisions of" Idaho Code section 68-108(b) as allowed by Idaho Code section 68-111. Therefore, pursuant to the terms of the Trust Indenture, the district court determined that Todd was not required to obtain court approval for the sale of the Property "*so long as* he used his best judgment based upon all the circumstances." (Italics in original.)

The district court then reviewed the evidence to determine whether Xantha and Braga had carried their burden to demonstrate that there was no issue of material fact as to whether Todd complied with the terms of the Trust Indenture in consenting to the sale of the Property. The district court concluded Xantha and Braga had not carried their burden, and declined to grant summary judgment in their favor on their first cause of action. Noting that Xantha and Braga had "brought

4

forth evidence that the value of the [P]roperty exceeded the sale price" and had "also presented evidence regarding the subsequent rental value of the [P]roperty, which provided years of uninterrupted cash flow[,]" the district court further declined to grant summary judgment to either party as to Todd's and White X Three's first counterclaim.

Next, the district court granted summary judgment in favor of Xantha and Braga as to Todd's and White X Three's second counterclaim, concluding that Xantha and Braga had probable cause to contest the Trust Indenture; as a result, the district court dismissed the second counterclaim. Last, the district court declined to grant summary judgment in favor of either party on Todd's and White X Three's third counterclaim, reasoning that whether the sale of the Property was void was still an open question and thus it was inappropriate to quiet title to the Property.

On December 23, 2020, Todd and White X Three moved for summary judgment a second time, this time with respect to all three of Xantha's and Braga's causes of action. Todd and White X Three also requested the district court dismiss Braga as a plaintiff because he lacked standing, and further asserted Xantha should be dismissed "on the basis of estoppel, consent, and the statute of limitations[.]" After a dispute over discovery, Xantha and Braga opposed Todd's and White X Three's motion for summary judgment but did not move for summary judgment on their own behalf.

The district court then rendered its second decision regarding summary judgment. Finding that Braga did not have standing, the district court dismissed him as a plaintiff.[4] Next, the district court granted summary judgment in favor of Todd and White X Three as to Xantha's first and second causes of action. The district court stated that "it [wa]s clear to the [c]ourt that Todd formed his judgment based upon all the circumstances of the situation as to the wisest and best course regarding the sale of the [P]roperty, and Xantha's interest in that sale." Because the sale was not void, the district court further concluded there was no need to place the Property in a constructive trust. The district court then determined there was an issue of material fact as to whether Todd violated his fiduciary duty as Trustee and declined to award summary judgment with respect to Xantha's third cause of action. The district court further determined that whether the statute of limitations barred the third cause of action was a question of fact for the jury to decide, and

---

[4] The dismissal of Braga as a plaintiff is not challenged on appeal. As a result, we have amended the title of the appeal to remove Braga as an appellant. I.A.R. 6 ("The Supreme Court may amend a title of an appeal or proceeding before it at any time.").

additionally declined to award summary judgment in Todd's and White X Three's favor regarding their affirmative defenses of estoppel and consent.

Xantha requested the district court enter a partial final judgment with respect to its dismissal of her first and second causes of action pursuant to Idaho Rule of Civil Procedure 54(b). The district court determined there was no just reason for delay and granted the request on August 25, 2021. Xantha timely appealed.

## II. STANDARD OF REVIEW

"This Court exercises *de novo* review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment.'" *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)).

> "On review, summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Progressive Nw. Ins. Co. v. Lautenschlager*, 168 Idaho 841, 844, 488 P.3d 509, 512 (2021) (quoting I.R.C.P. 56(a)). The moving party carries the burden to demonstrate the absence of a genuine issue of material fact. *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 742 (2010) (citation omitted).

*Taylor v. Taylor*, 169 Idaho 806, 812, 504 P.3d 342, 348 (2022).

> Ordinarily, "[a]ll disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Harrison v. Binnion*, 147 Idaho 645, 650, 214 P.3d 631, 636 (2009). However, "[w]hen an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004). "The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences." *Id.*

*Beus v. Beus*, 151 Idaho 235, 238, 254 P.3d 1231, 1234 (2011) (alterations in original).

## III. ANALYSIS

**A. The district court erred in granting summary judgment to Todd and White X Three as to Xantha's first cause of action.**

The district court concluded there was no issue of material fact as to whether the sale of the Property was void and granted summary judgment in favor of Todd and White X Three. On appeal, Xantha presents three main arguments as to why the district court erred in granting

summary judgment to Todd and White X Three on her first cause of action. First, Xantha argues that the district court misinterpreted Idaho Code sections 68-108(b) and 68-111. Second, Xantha argues that the district court erred in interpreting the terms of the Trust Indenture. Finally, Xantha asserts that, even if the district court's legal analyses were correct, the district court still erred in granting summary judgment to Todd because there were genuine issues of material fact. Each argument will be addressed in turn.

1. *The district court did not err in determining that the terms of a trust may supersede the statutory requirement to obtain court approval.*

Xantha's first assignment of error raises a question of statutory interpretation. The district court found that Todd had a clear conflict of interest in the sale of the Property. In general, trustees with conflicts of interest must obtain court approval prior to consenting to a sale of property. I.C. § 68-108(b). Idaho Code section 68-108(b) provides that "[i]f the duty of the trustee and his individual interest . . . conflict in the exercise of a trust power, the power may be exercised only by court authorization, except as provided in sections 68-106(c)(1), (4), (6), (18), and (24) upon petition of the trustee." However, the district court determined that the statutory requirement to obtain court approval could be superseded by the trust pursuant to Idaho Code section 68-111. Idaho Code section 68-111 provides that, "[e]xcept as specifically provided in the trust, the provisions of this act apply to any trust established after the effective date of this act." (The legislature enacted the Uniform Trustees' Powers Act ("the Act") in 1965. I.C. §§ 68-101–13.) The district court concluded that section 68-111 was "unambiguous and leaves no room for statutory construction" and "a trustor may draft trust terms that nullify the court approval requirements of § 68-108(b)."

On appeal, Xantha asserts that the district court erred when it read Idaho Code section 68-111 to allow settlors to draft around Idaho Code section 68-108(b)'s requirement for court approval. She argues that, by the plain language of the statute, the "court-approval requirement is not qualified in any manner: if a conflict of interest exists, the trustee's power may be exercised *only* by court authorization." (Italics in original.) Xantha reads Idaho Code section 68-111 to permit settlors to draft around the Act as a whole, but "it does not permit a trustor to draft around individual statutory provisions within the Act." Xantha further contends that the district court's interpretation impermissibly allows private parties to draft around a mandatory statute and is against public policy.

7

Todd and White X Three respond by urging the Court to adopt the district court's decision that Idaho Code section 68-111 allows settlors to draft trust terms "that nullify the court approval requirements of Idaho Code § 68-108(b)."

We hold the district court correctly interpreted Idaho Code section 68-111 to allow settlors to draft around section 68-108(b)'s requirement for court approval.

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). "It is incumbent upon this Court to interpret a statute in a manner that will not nullify it, and it is not to be presumed that the legislature performed an idle act of enacting a superfluous statute." *Sweitzer v. Dean*, 118 Idaho 568, 572, 798 P.2d 27, 31 (1990). "The Supreme Court will not construe a statute in a way which makes mere surplusage of provisions included therein." *Id.* "It is the duty of the courts in construing statutes to harmonize and reconcile laws wherever possible and to adopt that construction of statutory provision which harmonizes and reconciles it with other statutory provisions." *Id.* (quoting *Sampson v. Layton*, 86 Idaho 453, 457, 387 P.2d 883, 885 (1963)).

Pursuant to Idaho Code section 68-111, the provisions of the Act apply to a trust "[e]xcept as specifically provided in the trust[.]" I.C. § 68-111. The dictionary definitions of two words in the quoted clause lend guidance here. First, Merriam-Webster defines "as" to mean "in the way or manner that" and "in accordance with what or the way in which[.]" *As*, MERRIAM-WEBSTER, INC., https://www.merriam-webster.com/dictionary/as (last visited Nov. 16, 2022). Second, "specifically" is defined to mean "in a specific manner: in a definite and exact way: with precision[.]" *Specifically*, MERRIAM-WEBSTER, INC., https://www.merriam-webster.com/dictionary/specifically (last visited Nov. 16, 2022). Based on these definitions, section 68-111 should be read to mean that the provisions of the Act apply to a trust *except in the specific manner provided* in the trust. The reference to specificity suggests that the legislature intended settlors should be able to draft around specific provisions within the Act as they so choose, rather than the

8

all-or-nothing approach as Xantha suggests. Therefore, we conclude that by its plain language, Idaho Code section 68-111 unambiguously allows settlors to draft around the requirement to obtain court approval under section 68-108(b).

Xantha attempts to avoid this conclusion by pointing to *Taylor v. Maile*, 146 Idaho 705, 201 P.3d 1282 (2009), asserting that this Court has already determined Idaho Code section 68-108(b) to be unambiguous. In *Taylor*, this Court stated:

> [T]he plain, unambiguous language of the Uniform Trustees' Powers Act provides that even if a trustee's actions are reasonable and prudent, if a conflict of interest exists, the court must authorize the action before the trustee can exercise that power. This includes the power to close a real estate sale under I.C. § 68-106(c)(7).

*Id.* at 711, 201 P.3d at 1288. However, *Taylor* is factually distinguishable from the case at bar: Notably absent from the *Taylor* opinion is any discussion of whether the trust instrument contained a clause that attempted to render the court approval requirement a nullity. *See generally id.* Therefore, either the trust instrument did not contain such a clause or neither party presented the issue to the Court. Whichever occurred, this Court did not address the interplay between sections 68-108(b) and 68-111, and thus *Taylor* is inapposite here.

Xantha further argues that allowing settlors to draft trusts around the statutory requirement for court approval violates public policy. Citing *City of Meridian v. Petra Incorporated*, 154 Idaho 425, 446, 299 P.3d 232, 253 (2013) and *Drakos v. Sandow*, 167 Idaho 159, 164, 468 P.3d 289, 294 (2020), Xantha points out that this Court has refused to allow private parties to contract around statutory requirements, such as statutes of limitation. Notably, although each party's interpretation of the Act would allow private parties to contract around statutory requirements, Xantha provides no explanation as to how her interpretation of section 68-111 (that it allows settlors to only draft around the entire Act) supports public policy while on the other hand allowing settlors to draft around individual provisions in the Act violates public policy. Furthermore, the legislature expressly approved of drafting around section 68-108(b) by its enactment of section 68-111.

In sum, we conclude that the district court did not err in determining that Idaho Code section 68-111 provides that the terms of a trust may supersede the statutory requirement to obtain court approval set out in Idaho Code section 68-108(b).

> 2. *The district court did not err in determining that the terms of the Trust Indenture superseded the requirement to obtain court approval pursuant to Idaho Code section 68-108(b) provided that the trustee complied with Section W.*

9

The district court concluded that the terms of the Trust Indenture nullified the requirement to obtain court approval. Relying on Idaho Code section 68-111, the district court concluded that Idaho Code section 68-108(b) was inapplicable to the sale of the Property because "the terms of the trust unquestionably supersede the provisions of the statute." The district court found that the Trust Indenture was unambiguous. Pointing to Article VII, Section W of the Trust Indenture, the district court concluded that "the Trustee of the White Family Trust may sell (or otherwise consent to the sale of) Trust Property 'without the necessity of obtaining the consent of approval of any court,' so long as the Trustee uses his best judgment under all the circumstances."

On appeal, Xantha argues that, because the Trust Indenture "does not authorize Todd to engage in self-dealing to the detriment of a co-beneficiary[,]" the district court erred in determining the terms of the Trust Indenture superseded Idaho Code 68-108(b). Essentially, Xantha contends that Section W of the Trust Indenture lacks specific language regarding a trustee as a co-beneficiary; thus, she argues, Section W cannot supersede Idaho Code section 68-108(b) because Todd is both a co-beneficiary and the trustee. Xantha further asserts that Section W does not apply to a trustee's consent of a sale of real property not owned in full by the White Family Trust.

Next, Xantha argues that the Trust Indenture is ambiguous because "Section (W) as applied to these facts is inherently contradictory." Xantha posits that "Todd cannot consent to the sale of real property for his personal benefit and to the detriment of Xantha while also acting in a fiduciary capacity towards her."

Todd and White X Three respond that Section W is unambiguous and reflects the settlors' intent to grant the trustee(s) of the White Family Trust "absolute and unfettered discretion to make decisions regarding the management and disposition of the trust assets without the need to seek or obtain court approval." They argue that, because the Trust Indenture created the conflict of interest between Todd as a trustee and Todd as a co-beneficiary, the settlors implicitly approved of that conflict of interest.

> When interpreting a trust instrument, such instrument must be construed as a whole, considering all parts and reading each part in light of the whole instrument. *Matter of Estate of Kirk*, 127 Idaho 817, 827, 907 P.2d 794, 804 (1995). The Court's primary objective in construing a document is to discover the intent of the parties by viewing the document in its entirety. *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992). "The determination of a contract's meaning and legal effect are questions of law to be decided by the court where the contract is clear

10

and unambiguous." *Id.* When the document is ambiguous, the primary consideration is determining the intent of the parties. *Id.* "[I]n determining whether a contract is ambiguous, [the Court's] task is to ascertain whether the contract is reasonably subject to conflicting interpretation." *Id.* at 997, 829 P.2d at 1346.

*Frizzell v. DeYoung*, 163 Idaho 473, 477–78, 415 P.3d 341, 345–46 (2018) (alterations in original).

Once a court determines that a document is ambiguous, "interpretation of the document presents a question of fact which focuses upon the intent of the parties." *Bondy v. Levy*, 121 Idaho at 997, 829 P.2d at 1346. *See also Allen v. Dennie*, 116 Idaho at 916, 782 P.2d at 39. This issue of the settlors' intent, as a question of fact, [may] not be resolved on summary judgment. *See* I.R.C.P. 56(c); *Bondy v. Levy*, 121 Idaho at 997, 829 P.2d at 1346.

*Carl H. Christensen Family Tr. v. Christensen*, 133 Idaho 866, 873–74, 993 P.2d 1197, 1204–05 (1999).

We conclude that the Trust Indenture supersedes the statutory requirement to obtain court approval pursuant to Idaho Code section 68-108(b). Article VII of the Trust Indenture governs the "Powers of the Trustee(s)[.]" It provides in relevant part:

The Trustee shall have, with respect to any and all property, whether real or personal, which may at any time be held hereunder, whether constituting principal or accumulated income, the following rights and powers, which may be exercised in the Trustee's discretion at any time, and from time to time, during the continuance of any Trust hereunder and until actual distribution of all property:

. . .

(W) The Trustee may freely act under all or any of the powers herein granted to him in all matters concerning the trust estate, after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or approval of any court, and notwithstanding that he may be acting in his individual capacity, or as Trustee of other Trusts, or as an agent for other persons or interested in connection with the same matters as an agent, shareholder, director, or otherwise, provided, however, that he shall exercise such powers at all times in a fiduciary capacity primarily in the interests of the beneficiaries hereunder[.]

We recognize that Section W is not a model of clarity. However, upon examination it unambiguously reveals that the trustee may exercise a trust power without obtaining court approval if two conditions are met: first, that the trustee "form[s] his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries hereunder[;]" and second, that the trustee "exercise[s] such powers at all times in a fiduciary capacity primarily in the interests of the beneficiaries

11

hereunder[.]" So long as both conditions are met, the trustee is permitted to act without obtaining court approval. Therefore, we conclude that Section W supersedes Idaho Code section 68-108(b).

Xantha correctly points out that Section W does not expressly contemplate the conflict of interest arising when a person is both a trustee and a co-beneficiary. However, Section W broadly approves of conflicts of interest, allowing the trustee to exercise trust powers even when he is "acting in his individual capacity, or as Trustee of other Trusts, or as an agent for other persons *or interested in connection with the same matters as an agent, shareholder, director, or otherwise*[.]" (Italics added.) Furthermore, as noted by Todd and White X Three, the settlors, by the terms of the Trust Indenture, appointed Todd as a trustee knowing he was also a beneficiary of the trust. The settlors intended Section W to apply to Todd's exercise of trust powers.

Xantha next argues that trustees do not have the power to consent to the sale of real property not owned in full by the White Family Trust: "If the specific power exercised by Todd as trustee was not granted to him by the Trust Indenture Agreement, then Section (W) has no applicability." Xantha would have the Court read the Trust Indenture narrowly. However, like Section W, as discussed above, the trust powers laid out in the Trust Indenture are broad. First, contrary to Xantha's assertion, it is clear that the trust powers encompass real property. The opening statement of Article VII states that "[t]he Trustee shall have, with respect to any and all property, whether *real* or personal . . . the following rights and powers[.]" (Italics added.)

Next, as Todd and White X Three point out, sections F and Q of Article VII of the Trust Indenture allow a trustee to agree to a sale of real property owned only in part by the White Family Trust. Section F conveys the trustee the power "[t]o manage, control, sell at public or private sale" "any and all property[.]" Section Q conveys to the trustee the power

> [t]o do all such acts, take all such proceedings and exercise all such rights and privileges, although neither specifically hereinabove mentioned nor conferred upon it by law, with relation to such property *as if the absolute owner thereof* and in connection therewith to enter into any covenants or agreements binding the trust estate[.]

(Italics added.) Read together, sections F and Q grant Todd the power to agree to the sale of the Property.

Finally, Xantha's argument that the Trust Indenture is "inherently contradictory" and therefore ambiguous is without merit. The crux of Xantha's argument is that a trustee cannot act in a fiduciary capacity while "avoid[ing] his statutory obligation" under Idaho Code section 68-108(b) to obtain court approval. However, as discussed above, Idaho Code section 68-108(b)

12

is not a mandatory statutory obligation; rather, the terms of the Trust Indenture could (and did) negate the requirement to obtain court approval, so long as Todd complied with the mandates of Section W. Additionally, Xantha's argument rests on the fact that Todd's agreement to the sale of the Property was a detriment to Xantha—a fact which is heavily disputed by the parties. Thus, Section W does not create an "inherent inconsistency;" rather, Section W places limits on Todd's discretion as Trustee by requiring him to abide by the conditions set forth in Section W in order to bypass the requirement for court approval.

In sum, we hold that the district court did not err in determining Section W unambiguously supersedes Idaho Code section 68-108(b)'s requirement to obtain court approval for the sale of the Property.

3. *The district court erred in determining that there was no issue of material fact that Todd had fulfilled his obligations under the terms of the Trust Indenture as to the sale of the Property.*

After determining that the Trust Indenture superseded the automatic court-approval requirement, the district court concluded that it must evaluate Todd's decision to consent to the sale of the Property under the standard set forth in Article VII, Section W of the Trust Indenture: "[T]he standard which might invoke the necessity of court approval for Todd's consent to the sale of the [P]roperty is whether Todd formed 'his judgment based upon all the circumstances . . . as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries.'"[5] (Ellipsis in original.) The district court stated, "arriving at the most probable inferences from the undisputed material facts, it is clear to the [c]ourt that Todd formed his judgment based upon all the circumstances of the situation as to the wisest and best course regarding the sale of the [P]roperty, and Xantha's interest in that sale."

The district court noted that, while Todd did not have the Property appraised prior to the sale, the Property was sold for a $230,000 profit at a sale price that was approved by Marilyn

---

[5] Xantha based her claim that the sale of the Property was void on her argument that Todd had violated Idaho Code section 68-108(b), rather than arguing that Todd had violated Section W. In their answer, Todd and White X Three asserted a "counterclaim," alleging that Todd had complied with Section W and, for that reason, the sale of the Property was valid. However, while they categorized their Section W argument as a counterclaim, a more accurate characterization is that their Section W argument was simply a defense to Xantha's claim: They requested a declaration from the district court that Todd's actions "were consistent with the Grantors' stated provision in the Trust Indenture [Section W] that he was not required to obtain consent or approval of any court in order to consent to the sale of the [] Property by White, White & Lawley I." Essentially, they sought a declaration that, contrary to Xantha's claim, Todd did not need to obtain court approval prior to the sale of the Property. Because this is a legal argument against Xantha's claim, rather than a stand-alone counterclaim, and because the district court addressed the Section W argument without objection by the parties, we will address the parties' Section W arguments on appeal.

13

Lawley, "an astute businesswoman," who was only on the sellers' side of the sale. The district court next noted that "the agreement to sell the [P]roperty preceded the newer assessed [over $800,000] value at the time the transfer occurred." The district court concluded that, "[a]lthough Todd's action in evaluating the sales price of the property could have been better, it was not unreasonable."

Next, the district court considered "the dilapidated nature of the building on the [P]roperty required a significant remodel." The district court also noted that Todd had based his decision on Xantha's age, then twelve years old, when he concluded she "would be better off having liquid assets for her future living expenses, support and education; rather than having money tied up in a project that relied heavily on debt which would not be making any distributions in the near future." Further, the district court noted that in considering Xantha's risk in "becoming mired in a $2,000,000.00 renovation project[,]" Todd's "decision to take a more conservative route for her[] was entirely appropriate."

The district court placed great emphasis on evaluating Todd's decision in terms of the facts and circumstances known to Todd at the time he made the decision, stating, "[r]eliance on hindsight is inappropriate." The district court reasoned:

> Viewing the transaction as it existed in 2008, Plaintiffs' argument that it would have been better for a 12-year-old girl to be part of a remodel project requiring nearly $2,000,000.00 of debt, that was to be rented by an entity that had "precipitously" decreasing sales, instead of investing the proceeds of the sale of the [P]roperty into a much safer market (or other) investment, is wholly unpersuasive.

Ultimately, the district court granted summary judgment in favor of Todd and White X Three and dismissed Xantha's first cause of action.

On appeal, Xantha first asserts that the district court misapplied Section W of the Trust Indenture when determining the standard it used to evaluate Todd's decision-making process. Specifically, she argues the district court failed to apply the second prong of the standard set forth in Section W: whether Todd "exercise[d] [trust] powers at all times in a fiduciary capacity primarily in the interests of the beneficiaries hereunder." She contends that, had the district court analyzed this second prong, it necessarily would have concluded there was an issue of material fact because it had found an issue of material fact existed as to her third cause of action: whether Todd had violated his fiduciary duty.

Next, Xantha argues that, even under the "incomplete standard," the district court still erred in determining there was no issue of material fact. Xantha points out that the district court

14

originally declined to award summary judgment on the first cause of action when she was the party that moved for it. Although Todd and White X Three put forth additional affidavits before they moved for summary judgment, Xantha asserts that the "additional testimony did not resolve the genuine issues of material fact the district court determined existed in the first place."

Todd and White X Three respond that the district court correctly interpreted Section W of the Trust Indenture and applied the correct standard. They further contend Xantha is asking the Court to "analyze Todd's decision in hindsight" in contravention of the prudent investor rule.

We agree with Xantha's interpretation of Section W of the Trust Indenture. Section W states that

> [t]he Trustee may freely act under all or any of the powers herein granted to him in all matters concerning the trust estate, after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or approval of any court, and notwithstanding that he may be acting in his individual capacity, or as Trustee of other Trusts, or as an agent for other persons or interested in connection with the same matters as an agent, shareholder, director, or otherwise, *provided, however, that he shall exercise such powers at all times in a fiduciary capacity primarily in the interests of the beneficiaries hereunder*[.]

(Italics added.) Xantha reads Section W to allow a Trustee to exercise his given powers without court approval only if two conditions are met: first, the Trustee "form[s] his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries" of the White Family Trust; and, second, the Trustee "exercise[s] such powers at all times in a fiduciary capacity[.]" As discussed above, we agree. Section W aligns with Xantha's interpretation: The Trustee may exercise a trust power "after forming his judgment" "as to the wisest and best course" but must exercise that trust power "in a fiduciary capacity primarily in the interest of the beneficiaries[.]" The district court analyzed Todd's actions only under the first prong but did not address the second prong. This was error. Only if Todd satisfied *both* prongs does Section W operate to supersede Idaho Code section 68-108(b)'s requirement that he obtain court approval.

We need not, however, remand to the district court to determine in the first instance whether there is a genuine issue of material fact as to whether Todd satisfied the second prong of Section W. While the district court did not analyze whether Todd had violated his fiduciary duty under Section W, it did analyze whether Todd had violated his fiduciary duty under Xantha's third

15

cause of action and ultimately determined that there was a genuine issue of material fact which precluded summary judgment on that claim. We note that, unlike Xantha's first cause of action, her third cause of action will be tried by a jury rather than the district court. As the district court correctly noted, it was required to liberally construe the facts and draw all reasonable inferences in Xantha's favor at the summary judgment stage. While the fiduciary duty inquiry here would allow the district court sitting as factfinder to draw the most probable inferences from the undisputed facts, we are nonetheless convinced that, had the district court addressed Section W's second prong, it would have concluded there was a genuine issue of material fact as to whether Todd had violated his fiduciary duty under Section W.

For example, in concluding there is a genuine issue of material fact as to Xantha's third cause of action, the district court expressly noted the disparity between the sale price of the Property and the much higher value the Property was assessed to be shortly after the agreement to sell was reached. Additionally, the district court noted that, while Todd personally guaranteed $2 million in debt in order to purchase and renovate the Property, he effectively "converted his 1/6 interest in the [P]roperty to a 1/3 interest in the [P]roperty." The district court further reasoned that, although "Todd had a duty to Xantha to keep her reasonably informed of the trust and its administration[,]" "[t]here is substantial evidence in the record that Todd did not do so." Although the district court did not specifically apply this analysis to the second prong of Section W, this analysis is nonetheless applicable as to whether Todd violated his fiduciary duty as set forth in Section W.

Todd and White X Three contend that Todd only "had two choices he could make on behalf of the Trust in 2008[:]" He could either consent to the sale of the Property or not. However, Xantha makes clear that she is challenging two separate decisions Todd made: first, his decision to consent to the sale of the Property at all, and second, his decision to consent to the sale of the Property at the sale price of $650,000.

As to Todd's decision to consent to the sale of the Property, Xantha points out that the district court placed great weight on Todd's purported consideration of the liquidity of Xantha's assets, despite the fact that Xantha already had over $300,000 of liquid assets in the White Family Trust at the time the Property was sold. The district court discounted that liquidity, seemingly because it was a small percentage of Xantha's total assets: "At first blush, Plaintiffs' argument might seem to be a valid objection to Todd's reasoning; however, it ignores the fact that Xantha's

*total interest* in White Family Trust at the time slightly exceeded $1 million." (Italics in original.) However, at no point in Todd's affidavits, nor during his deposition, did he explain his liquidity determination in terms of a percentage of Xantha's total assets. Rather, although he acknowledged Xantha already had more than $300,000 in liquid assets in the White Family Trust, Todd appeared to have reasoned only that Xantha needed more liquidity due to her young age. He did not appear to have taken into account her actual liquidity under the White Family Trust, nor did he appear to have considered whether Xantha needed more liquidity *compared to her actual liquidity*; instead, Todd appeared to have valued liquidity above all else, regardless of the actual facts and circumstances of Xantha's financial position. While a factfinder could ultimately agree with Todd's liquidity-above-all-else approach, the factfinder should only do so with the benefit of evidence elicited at trial—not at the summary judgment stage. Furthermore, Xantha has pointed to evidence that White X Three is leasing the renovated property for $21,000 per month. Although the one-time payment of $95,000 gave Xantha a greater degree of liquidity, it effectively eliminated the possibility of greater long-term growth of her assets. The cash received by Xantha from the sale of the Property pales in comparison to the cash flow generated by the leasing of the Property. We conclude Xantha has shown the existence of an issue of material fact as to whether Todd acted "after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue" and whether he acted "in a fiduciary capacity" in consenting to sell the Property.

Next, as to Todd's decision to consent to the sale of the Property for $650,000, Xantha acknowledges that the $807,261 assessment of the Property occurred after Todd had agreed to the sale of the Property for $650,000. However, she argues that "[t]he timing of the assessor's valuation does not change the fact that Todd did no due diligence to determine the fair market value of the Property at the time of the sale." It is undisputed that Todd never had the Property appraised, nor did he hire a real estate agent to analyze the sale in any way. Rather, in his deposition, Todd explained that the $650,000 sale price originated from Rick White, Sr., who was both the managing member of White X Three and a partner of WWLI. Todd further testified in his deposition that he, Rick White, Sr., and Marilyn Lawley "felt that [$650,000] was a very fair price" based on their own experiences in the real estate market in Twin Falls but admitted that he did not review any documentation to determine the fair market value of the Property. As the district court noted, "Todd's action in evaluating the sales price of the [P]roperty could have been better[.]"

17

Although Todd did not have knowledge of the $807,261 assessment before he agreed to the sale of the Property, the fact that the assessment is over $150,000 more than the sale price illustrates the problem in Todd's decision not to obtain an appraisal. More concerning, however, is Todd's faith in Rick Sr.'s arriving at the sale price. Like Todd, Rick Sr. was a partner in WWLI and a member of White X Three and thus was on both the selling and the purchasing sides of the transaction. As Xantha points out in her reply brief:

> Rick White confirmed that no appraisal was completed, nor did he consult with any real estate agents or commercial property brokers, or look at any other comparable sales for commercial properties in determining the ultimate sales price of $650,000.00. Other than looking to the 2007 tax assessment, Rick White did not review any other documentation in coming up with the $650,000.00 figure.

(Internal citations omitted.)

Todd and White X Three maintain that Lawley, the only seller on only one side of the transaction, approved of the sale price of the Property. However, at no point in her declaration does Lawley discuss the fair market value of the Property; rather, she states that she was in her late seventies at the time of the sale and refused to personally guarantee the loan that would be required to renovate the Property. She further stated she agreed to the sale price "because a substantial amount of profit would accrue to [her] given the difference between the original purchase price and the sale price of the [P]roperty[.]" At most, Lawley can be said to have approved of the sale price because it was significantly higher than the 1998 purchase price and she would personally benefit from selling the property. Between Rick Sr.'s conflict of interest in the sale, Todd's lack of independent analysis, and the lack of information in Lawley's declaration, Xantha has shown the existence of an issue of material fact as to whether Todd acted "after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue" and whether he acted "in a fiduciary capacity" in consenting to the sale price of the Property.

In sum, we conclude the district court erred in determining there was no issue of material fact that Todd complied with the terms of the Trust Indenture in consenting to the sale of the Property, both in general and in terms of the sale price. Therefore, we hold that the district court erred in granting summary judgment in favor of Todd and White X Three as to Xantha's first cause of action.

**B. The district court erred in granting summary judgment to Todd and White X Three as to Xantha's second cause of action.**

The district court also granted summary judgment for Todd and White X Three as to Xantha's second cause of action. Xantha requested that the district court create a constructive trust for the Property. The district court declined to do so because "[t]his remedy [wa]s contingent upon the [c]ourt finding the sale of the [P]roperty in 2008 to be void" and the district court had determined "there [wa]s no basis to void the sale[.]"

On appeal, Xantha argues that, because the district court erroneously determined that there was no issue of material fact whether the sale of the Property was void, the district court also erroneously dismissed her request to place the Property into a constructive trust. She requests that this Court reverse the district court's grant of summary judgment to Todd and White X Three as to her second cause of action. Todd and White X Three do not respond to Xantha's arguments regarding the creation of a constructive trust.

Because we agree with Xantha's assertion that the district court erred in granting summary judgment as to her first cause of action, we also hold that the district court erred in granting summary judgment as to her second cause of action. As discussed above, the requirement in Idaho Code section 68-108(b) that Todd obtain court approval prior to consenting to the sale of the Property is only superseded by Section W if Todd complied with the two conditions set forth in Section W. If Todd did not comply with Section W, Idaho Code section 68-108(b) applied to the sale of the Property and, because he did not obtain court approval, the sale of the Property would be void. Therefore, we hold that Xantha has established there is an issue of material fact as to whether the Property should be placed in a constructive trust. We reverse the district court's grant of summary judgment as to the second cause of action and remand the matter to the district court for reconsideration after Xantha's first cause of action is resolved on the merits.

**C. Todd and White X Three are not entitled to attorney fees on appeal.**

Todd and White X Three request attorney fees on appeal pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 41. They assert that Xantha's Complaint "was ill-conceived and that this appeal by Xantha has been brought frivolously, unreasonably, and without foundation." Xantha counters that she has brought her arguments in good faith and, importantly, "[t]his appeal presents legal issues of first impression[.]"

Todd and White X Three are not the prevailing parties on appeal and are thus not entitled to attorney fees. Additionally, Todd and White X Three are not entitled to attorney fees because

19

this appeal raises a novel question of law. Idaho Code section 12-121 provides that, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "Fees under section 12-121 are not appropriate when the appeal raises a novel legal question." *Glatte v. Hernandez*, 170 Idaho 481, 486, 512 P.3d 1104, 1109 (2022). This case turns on the interpretation of two statutes enacted as part of the Uniform Trustees' Powers Act. Despite both statutes being enacted over half a century ago in 1965, this Court has never analyzed the interplay of Idaho Code sections 68-108(b) and 68-111. In fact, this Court has never analyzed section 68-111—the only "citing references" available for the statute on Westlaw are the three briefs submitted by the parties to this appeal. Therefore, we deny Todd's and White X Three's request for attorney fees.

## IV. CONCLUSION

For the foregoing reasons, this Court vacates the district court's grant of summary judgment as to both Xantha's first and second causes of action and remands for further proceedings.

Chief Justice BEVAN, Justice MOELLER, and TRIBE, J. Pro Tem, CONCUR.


ZAHN, Justice, dissenting.

I agree with the majority that: (1) Idaho Code section 68-111 provides that the terms of a trust may supersede the statutory requirement for court approval contained in section 68-108(b), and (2) that Section W of the Trust Indenture in this case supersedes section 68-108(b). However, I do not agree with its conclusion that Xantha can nullify Section W and revive the applicability of section 68-108(b) if she establishes that Todd violated Section W. I therefore respectfully dissent.

This case comes to us on an Idaho Rule of Civil Procedure 54(b) certificate of final judgment. The only two claims before us on appeal are Xantha's first and second causes of action. The first cause of action sought a declaratory judgment that the sale of the real property was void. It was based entirely on the assertion that Todd violated section 68-108(b) when he failed to obtain court approval prior to selling the real property. The second cause of action requested that, because the sale of the property was void, the court place the real property in a constructive trust.

I agree that Idaho Code section 68-111 allows settlors to draft around section 68-108(b)'s requirement for court approval and that Section W supersedes section 68-108(b)'s requirement to obtain court approval for the sale of the Property. These conclusions resolve Xantha's first claim. Section W did not require Todd to obtain court approval before consenting to the sale of the Property. As a result, Xantha is not entitled to a judgment that the property sale was void. That conclusion, in turn, resolves her second claim. The property sale is not void under section 68-108(b) and Xantha therefore is not entitled to the imposition of a constructive trust.

If the majority opinion ended there, I would join it with no reservations. However, the majority goes further. Despite holding that the settlors in this case drafted around section 68-108(b), the majority goes on to conclude that if Todd failed to comply with Section W of the Trust Indenture, Todd was required to obtain court approval pursuant to section 68-108(b):

> As discussed above, the requirement in Idaho Code 68-108(b) that Todd obtain court approval prior to consenting to the sale of the Property *is only superseded by Section W if Todd complied with the two conditions set forth in Section W*. If Todd did not comply with Section W, Idaho Code section 68-108(b) applied to the sale of the Property and, because he did not obtain court approval, the sale of the Property would be void.

(Emphasis added.) I cannot join this part of the majority's opinion because it is based on two erroneous conclusions. First, the majority misconstrues Respondents' first counterclaim as exclusively stating an affirmative defense to Xantha's first claim for relief. Second, the majority erroneously concludes that, while a settlor can draft around the requirements of section 68-108(b), the requirements of that section are revived if the trustee breaches the trust indenture.

The first error relates to Respondents' first counterclaim. The majority construes the language of Respondents' first claim as seeking only "a declaration that, contrary to Xantha's claim, Todd did not need to obtain court approval prior to the sale of the Property." One paragraph of the counterclaim does seek such a declaration. The paragraph thus states both a counterclaim and an affirmative defense to Xantha's first claim. This claim is resolved in Todd's favor by the conclusion that section 68-111 allows settlors to draft around section 68-108(b) and that the settlors in this case did as much in Section W of the Trust Indenture.

The majority's mistake is in concluding that Respondents' first claim only seeks this one declaration. A close reading of the claim reveals that it actually seeks *two* declarations. A second paragraph of the first claim seeks a declaration that Todd in fact complied with Section W when he consented to the sale of the property:

21

Todd is entitled to a declaration from this court that his actions as set forth herein *were consistent with* the Grantors' stated provision in the Trust Indenture that he was not required to obtain consent or approval of any court in order to consent to the sale of the Kimberly Road Property by White, White & Lawley I.

(Emphasis added.) It makes sense that Respondents would seek both declarations. To establish that Todd properly consented to the sale of the property, they must show both that: (1) Section W relieved Todd of the obligation to seek court approval prior to consenting to the sale, and (2) Todd in fact complied with Section W.

This second paragraph states a claim for relief, not an affirmative defense. "An affirmative defense is a 'defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.'" *Van Orden v. Van Orden*, 170 Idaho 597, 607, 515 P.3d 233, 243 (2022) (quoting *Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 943, 454 P.3d 580, 585 (2019)). Xantha's first claim sought a declaration that Todd was required to obtain consent pursuant to section 68-108(b) prior to consenting to the sale. Whether he, in fact, complied with Section W is irrelevant to this determination. As a result, the second requested declaratory judgment is not an affirmative defense because it cannot defeat Xantha's claim that section 68-108(b) applied to the transaction. Instead, the second requested declaratory judgment is its own claim for relief.

This distinction is important because the only issues before us on appeal are whether the district court erred in granting summary judgment on Xantha's first two claims for relief. The district court did not enter judgment on Respondents' first counterclaim and, as a result, the request for a declaration that Todd complied with Section W is not before us on appeal. Because judgment has not been entered on that portion of the first counterclaim, and because it does not constitute an affirmative defense to Xantha's first claim for relief, there is no basis for the majority to address whether Todd complied with Section W.

Even if there was a basis to address Todd's compliance with Section W, there is no legal basis for the majority's conclusion that Xantha can resuscitate the applicability of section 68-108(b) if she establishes Todd failed to comply with Section W. Idaho Code section 68-111 is short and to the point:

Except as specifically provided in the trust, the provisions of this act apply to any trust established after the effective date [May 17, 1965] of this act.

(Alteration in original.) It unambiguously states that if the trust provides otherwise, then the provisions of the Uniform Trustees' Powers Act ("Act") do not apply. The statute does not impose

22

an additional requirement that the trustee must also comply with the provisions of the trust. According to section 68-111, the Act applies unless the trust's provisions indicate otherwise. The trust in this case indicated otherwise and therefore section 68-108(b) did not apply. Once settlors draft around the Act's provisions, that is it. The beneficiaries' rights are governed by the trust indenture. The majority has cited no legal support for its conclusion to the contrary.

This does not mean that Xantha is left without a remedy if Todd failed to comply with Section W. But that remedy is not found in the Act. Instead, it is found in tort or trust law and is an action for breach of trust:

> A trustee's breach of trust provides a basis for the liability of the trustee regardless of whether the breach is wrongful and fraudulent or done through negligence or arises through mere oversight and forgetfulness, rendering the trustee liable for any damages proximately resulting from the breach, measured by the amount actually lost by the breach or the amount which the trustee has gained thereby. Redress may be had against the trustee for exceeding the trustee's powers, acting negligently, or abusing the trustee's discretion.

> The liability of the trustee may rest in tort, but, independent of tort law, trust law is a source of the trustee's duties and liability for breach of trust. The required showing is (1) the presence of a formative instrument, (2) a duty owed by the defendant to the plaintiff, and (3) a breach of that duty, and (4) damages. The standard of proof for a breach of fiduciary duty claim against a trustee is clear and convincing evidence, rather than preponderance of the evidence.

90A C.J.S. *Trusts* § 347 (2023); *see also* Restatement (Third) of Trusts § 95 cmt. a (2012) (suggesting beneficiary's remedies against trustee for breach of trust are, with limited exceptions, equitable in nature). Although Xantha has not pleaded a breach of trust claim at this point, this case will be remanded for further proceedings on her third claim for relief and on Respondents' remaining counterclaims. Depending on the status of the proceedings on that point, it may be possible for Xantha to successfully amend her pleadings to add a claim addressing Todd's failure to comply with Section W.

Whether Xantha amends her complaint or not, on remand, the district court will need to resolve the remainder of Respondents' first counterclaim, which seeks a declaration that Todd complied with Section W when he consented to the sale. The district court previously addressed this issue in relation to Xantha's first claim for relief. It is unclear why the district court believed resolution of that question was relevant to Xantha's first claim. To the extent it based its decision to grant summary judgment on the conclusion that Todd failed to comply with Section W, I would hold that it erred. For the reasons stated previously, whether Todd complied with Section W is

irrelevant to the request prayed for in Xantha's first claim—a determination that Todd was required to obtain court approval prior to consenting to the sale of the property. Nevertheless, I would affirm its grant of summary judgment because it correctly held in its first memorandum decision and order that section 68-111 permits a trust to supersede statutory provisions and that the settlors in this case created a trust that drafted around the requirements of 68-108(b). These conclusions resolved Xantha's first and second claims for relief and I would affirm its decision dismissing those claims on that basis.

However, in the interest of providing guidance on remand, I agree with the majority's conclusion that the district court erred in its interpretation of Section W and the obligations that it imposed on Todd. Section W indicated that Todd had to satisfy two conditions prior to consenting to the sale of the Property. First, he had to form "his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interests of the Trust and the beneficiaries." Second, he had to "exercise such powers at all times in a fiduciary capacity primarily in the interests of the beneficiaries hereunder." I also agree with the majority that Xantha established a genuine issue of material fact on whether Todd complied with both of these conditions when he consented to the sale of the Property.

In summary, the district court's determination that section 68-111 permits settlors to draft around the Act, and that the settlors in this case drafted a trust that superseded the requirements of section 68-108, resolved Xantha's first and second claims for relief. I would affirm the district court's grant of summary judgment on both claims. The majority opinion reversing the grants of summary judgment goes beyond the claims presented to us on appeal and is based on an erroneous conclusion of law. I therefore respectfully dissent.